**Donald Blanton HENDERSON, Appellant,**

v.

**STATE of Texas, Appellee.**

**Nos. 01–98–01307–CR to 01–98–01309–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 21, 2000.

Rehearing Overruled Oct. 26, 2000.

---

Stanley G. Schneider, Houston, for Appellant.

John B. Holmes, Dan McCrory, Houston, for Appellee.

Panel consists of Justices MIRABAL, ANDELL, and DUGGAN.*

## OPINION

MARGARET GARNER MIRABAL, Justice.

A jury found appellant, Donald Blanton Henderson, guilty of three offenses of intoxication assault and assessed punishment at four years confinement for each offense. In eight points of error, appellant contends the evidence is legally and factually insufficient to support his conviction, he was denied effective assistance of counsel, and the trial court erred in overruling his objection to the testimony of three individuals at the punishment stage of his trial. We affirm.

## FACTS

On March 31, 1998, at approximately 9:30 p.m., appellant was involved in an accident involving his car and two other cars. The accident occurred on Stuebner–Airline, a four-lane road separated by a 13–foot median. David Hilborn, an accident investigator with the Harris County Sheriff's Department, testified that appellant was driving his car northbound on Stuebner–Airline when he hit a guardrail of a bridge. Appellant's car then crossed the median and struck a southbound car driven by Gilly Gennaro.[1]

After appellant's car collided with Gennaro's car, appellant's car rotated to the left and hit the broadside of another car, which was occupied by Mary and Bill

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Gennaro suffered a broken wrist and other injuries.

Steely.[2] Several motorists traveling along Stuebner–Airline made several observations before, during, and after the accident. Ronald Williamson was driving in a vehicle behind Genarro when he noticed appellant's car weaving in and out of traffic and passing cars. Francis and Ralph Lancaster were driving north-bound on Stuebner–Airline when they heard a loud thud. When they looked around, they saw appellant's car pass them on two wheels in such a manner that Mr. Lancaster could see the undercarriage of appellant's car. Mr. Lancaster estimated that appellant's car was traveling about 80 miles per hour when it passed his vehicle. The speed limit on Stuebner–Airline is 45 miles per hour. Mr. Lancaster testified that when appellant's car landed back on four wheels, "the steering locked hard to the right he spun it around and went across the median head on into oncoming traffic."

After the accident had occurred, Brandon Atkins approached the driver's side of appellant's car, and he detected the odor of alcohol emanating from the car. He also noticed a broken liquor bottle behind the car's right rear tire. Later, Atkins approached appellant as appellant was being placed in an ambulance, and he again detected the odor of alcohol. Ronald Williamson stopped at the accident site as well. He testified that he smelled the odor of alcohol as he approached appellant's car, and he believed appellant was drunk. Initially, he was unsure if the odor of alcohol was emanating from appellant or from appellant's car. However, Williamson later stood next to appellant as appellant was placed on a stretcher, and he determined that the odor was coming from appellant.

Officer L. Gonzales was the first officer to arrive at the accident scene. He checked the status of everyone involved in the accident. He did not detect the odor of alcohol on appellant or coming from appellant's car.

Officer D. Hilborn testified that he entered the ambulance where appellant and Gennaro were placed. Hilborn detected a strong odor of alcohol in the ambulance and believed the odor was coming from appellant rather than Gennaro. Gennaro testified that while she and appellant were in the ambulance, she heard appellant admit to the paramedic that he had been drinking although he would not say how many drinks he had consumed. Gennaro did not detect an odor of alcohol in the ambulance.

Joe Marshall, a paramedic who worked the accident scene, testified that, during his initial assessment of appellant, he smelled the odor of alcohol on appellant. Marshall asked appellant if he had been drinking, and appellant replied affirmatively, but would not comment on how many drinks he had consumed. Appellant did answer questions concerning his medical history. Marshall testified that appellant's speech was slurred and that he believed appellant was drunk. Marshall also testified that appellant repeatedly asked him if anyone else was injured in the accident. Marshall delivered appellant to the hospital at 10:24 p.m.

Judith Gross, a family nurse practitioner, received appellant as a patient at 10:30 p.m. in Houston Northwest Medical Center's minor emergency clinic. Gross detected a strong odor of alcohol on appellant. Gross testified that appellant's speech was slurred, he was unaware of what was going on, and did not know how he had gotten to the hospital. Gross explained to the jury that impairments such as these were more consistent with intoxication than with a head injury. Gross turned appellant's care over to Dr. Jack Nuszen, an emergency room physician.

Dr. Nuszen testified that appellant admitted he had been drinking, and, as a result, Dr. Nuszen ordered a blood alcohol test at 1:30 a.m. Appellant's blood was drawn at 2:03 a.m. The medical lab techni-

---

2. Ms. Steely suffered a knee injury that required 20 stitches and other injuries to her chest and abdomen. Mr. Steely suffered a broken hip, nose, and ribs.

cian, Patricia Ferdinan, separated appellant's serum from his blood and tested appellant's serum using the Beckman instrument. Ferdinan testified that the Beckman instrument was working properly when appellant's blood was tested. Appellant's serum contained 172 milligrams of alcohol per deciliter. One of appellant's own experts, Dan Kirby, testified that an alcohol content of .172 derived from a serum test is roughly equivalent to a .146 alcohol content in a blood test. Dr. Nuszen diagnosed appellant with a closed head injury.

Appellant's care was turned over to Karen Trevino, a registered nurse, at 1:30 a.m. She testified that there was a strong odor of alcohol coming from appellant; however, appellant told Trevino that he had not been drinking. Based on appellant's slurred speech, his odor, and his dazed appearance, Trevino concluded that appellant was intoxicated. She did not believe that appellant's behavior was attributable to a head injury because his CAT scan was negative. Trevino believed that appellant was still intoxicated when he was released from the hospital at 3:40 a.m.

Officer Hilborn arrived at the hospital some time after 2:00 a.m. Based on his observations, he believed that appellant was intoxicated. Accordingly, appellant was arrested upon his release from the hospital.

After the State rested its case-in-chief, appellant offered the testimony of several individuals. Appellant's wife, Majorie Henderson, testified that, on the evening in question, appellant arrived home at 6:30 p.m. and remained there until he took his son to soccer practice at 7:45 p.m. She stated that appellant did not have anything to drink during this time and that he was not intoxicated. Ms. Henderson came to the hospital after the accident. She stated that appellant was not intoxicated.

Appellant dropped his son off at soccer practice and remained there for about one-half hour. Appellant spoke to his son's soccer coach during this time period, and the coach testified that he did not detect the odor of alcohol on appellant. At 8:30 p.m., appellant left the soccer field and drove to Ashbury's, a club and restaurant. There, appellant talked with two of his long-time friends, Jay Methana and Connie Craig. Appellant stayed at Ashbury's for about one-half hour. Methana and Craig testified that they saw appellant have a drink, but that they did not think that he was drunk.

Appellant's expert, Dan Kirby, testified that the blood alcohol content test performed at the hospital may not have been reliable; however, he conceded that he did not know if the test result was incorrect. Appellant also presented the expert testimony of a mechanic, John Teague, who stated that he believed the accident was caused by a mechanical failure of the steering system in appellant's car. A traffic investigator, Michael Young, testified that his investigation of the crash site yielded results consistent with steering failure of appellant's car.

On rebuttal, the State offered the testimony of John Pappas, the finance director of a local Jaguar dealership. He testified that appellant purchased a new Jaguar six months prior to the trial, and that appellant told him that his previous Jaguar, the car appellant was driving when the accident occurred, saved his life in a head-on collision. Appellant made no mention of the steering malfunction.

## DISCUSSION

### Sufficiency of the Evidence

To prove appellant committed intoxication assault, the State had to show that appellant, by accident or mistake, while operating a motor vehicle in a public place while intoxicated, and by reason of that intoxication, caused serious bodily injury to another. Tex. Penal Code Ann. § 49.07(a) (Vernon Supp.2000). We apply the usual standards of review for factual and legal sufficiency of the evidence.

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (legal sufficiency); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996) (factual sufficiency).

■ In appellant's first point of error, he contends the evidence is factually insufficient to support the jury's verdict that appellant did not "have the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body" at the time of the collision, *i.e.,* that he was intoxicated at the time of the accident. Specifically, appellant contends that his actions could be attributed to a closed head injury rather than intoxication.

Six witnesses who encountered appellant either at the accident scene or at the hospital testified that they detected the odor of alcohol emanating from appellant. Two of the nurses who treated appellant testified that the odor of alcohol on appellant was strong.

Further, appellant admitted to Marshall, a paramedic on the scene, that he had been drinking, but refused to divulge how much alcohol he had consumed. Gennaro heard this conversation between appellant and Marshall. Marshall, Gross, and Trevino stated that appellant's speech was slurred. Based on their own observations, Hilborn, Marshall, Gross, Trevino, and Williamson concluded that appellant was intoxicated. Ferdinan testified that the serum test she performed on appellant's blood, which was drawn four and one-half hours after the accident, revealed that appellant's serum contained 172 milligrams of alcohol per deciliter. Appellant's own expert, Kirby, testified that this result was equivalent to a .146 alcohol content in a blood test.

■ The testimony of a police officer that an individual is intoxicated is probative evidence of intoxication. *Gruber v. State,* 812 S.W.2d 368, 370 (Tex.App.—Corpus Christi 1991, pet. ref'd). More-over, a blood alcohol level beyond the legal limit, such as appellant's, is probative evidence of a person's loss of his or her faculties. *See Daricek v. State,* 875 S.W.2d 770, 773 (Tex.App.—Austin 1994, pet. ref'd).

■ Although Dr. Nuszen diagnosed appellant with a closed head injury, this did not preclude the jury from finding that appellant was intoxicated. The existence of a closed head injury: (1) does not explain why appellant was speeding and driving erratically immediately before the incident; (2) does not explain or discount the testimony of those individuals who testified that they smelled the odor of alcohol on appellant; and (3) does not explain the blood alcohol test that revealed a high level of intoxication four and one-half hours after the accident.[3] Accordingly, the diagnosis of a closed head injury does not render the evidence of intoxication insufficient. *See State v. Charlton,* 847 S.W.2d 443, 446 (Tex.App.—Houston [1st Dist.] 1993, no pet.).

Appellant also contends the evidence is insufficient to support his conviction because his family and friends testified that he was not intoxicated, and because appellant's experts testified that the accident was caused by a mechanical failure of the steering mechanism on his car.

■ The jury as trier of fact is the sole judge of the credibility of the witnesses and the weight to be given the testimony. *Cain v. State,* 958 S.W.2d 404, 407–409 (Tex.Crim.App.1997). It may accept or reject all or any part of any witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986).

We conclude the evidence is factually sufficient to support the jury's verdict that appellant did not have the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body

---

**3.** There is no evidence indicating appellant consumed alcohol between the time of the accident and the time his blood was drawn four and one-half hours later.

at the time of the collision. Accordingly, we overrule appellant's first point of error.

■ In points of error two and three, appellant maintains the evidence is legally and factually insufficient to support the jury's verdict that he is criminally responsible for the conduct as charged in the indictment because his experts testified that the accident was caused by a mechanical failure in his car's steering mechanism. As a result, appellant contends that he is not criminally responsible based on the theory of concurrent causation as defined in section 6.04 of the Texas Penal Code.[4]

Appellant's argument rests on the testimony of Teague, a mechanic who testified that the accident was caused by a mechanical failure in appellant's car's steering system, and Young, a traffic investigator who testified that the traffic site yielded results consistent with a failure of the steering system. Based on the testimony of these two witnesses, appellant contends that he is not criminally responsible for the accident because the accident was caused by a steering mechanism malfunction rather than his conduct.

■ The credibility of witnesses is within the sole province of the jury; the jury can choose to believe or not believe the testimony of any witness. *Sharp,* 707 S.W.2d at 614. Even when a witness's testimony is uncontradicted, the jury can choose to disbelieve a witness. *Smith v. State,* 789 S.W.2d 419, 420 (Tex.App.— Houston [1st Dist.] 1990, pet. ref'd).

Teague and Young's testimony was speculative as to exactly when the steering mechanism may have failed. Teague even admitted it was possible that the key parts in the steering mechanism may have come apart as a result of the accident, not before. Teague also testified that when steering goes out, the driver would know

immediately and would probably go for the brakes to slow down. He further said that in such a case, after a wreck, the first thing the driver would normally say is that the steering went out.

In light of the evidence that appellant did not step on his brakes to slow the speed of the car before the collision, and the further evidence that in the hours and days after the collision appellant apparently did not complain to anyone that his steering had gone out, the jury could have totally discounted Teague and Young's testimony that the steering defect caused the accident. The evidence that appellant purchased another Jaguar after the accident, stating that his previous Jaguar "had saved his life," as well as the evidence that even though appellant was involved in civil litigation arising out of the accident he had not sued Jaguar claiming any steering defect, could have been construed by the jury as showing appellant's belief that a condition of his car was *not* the cause of the accident.

The evidence is legally and factually sufficient to support the jury's verdict as to the element of causation. We overrule appellant's second and third points of error.

### Effective Assistance of Counsel

In his fourth and fifth points of error, appellant asserts he was denied effective assistance of counsel because his trial counsel did not request a jury instruction on concurrent causation under section 6.04 of the Texas Penal Code.[5]

■ The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Crim. App.1986); *Gamble v. State,* 916 S.W.2d

---

4. A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce

the result and the conduct of the actor clearly insufficient. Tex. Penal Code Ann. § 6.04(a) (Vernon 1994).

5. See footnote four.

92, 93 (Tex.App.—Houston [1st Dist.] 1996, no pet.). Appellant must show both that (1) counsel's performance was so deficient that he was not functioning as acceptable counsel under the sixth amendment, and (2) but for the counsel's error, the result of the proceedings would have been different. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Gamble,* 916 S.W.2d at 93.

It is the defendant's burden to prove ineffective assistance of counsel. *Id.* A defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2064; *Gamble,* 916 S.W.2d at 93. A claim of ineffective assistance of counsel must be firmly supported by the record. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996). An appellate court will not make a finding of ineffectiveness based on speculation. *Gamble,* 916 S.W.2d at 93.

Here, appellant filed a motion for new trial, but did not obtain a hearing. As a result, there is no evidence in the record as to why appellant's trial counsel did not request a jury instruction on concurrent causation. To find trial counsel was ineffective would call for speculation, which we will not do.[6] *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1999); *Gamble,* 916 S.W.2d at 93; *see also Young v. State,* 991 S.W.2d 835, 838 (Tex.Crim. App.1999) (just because a competent defense attorney recognizes that a particular defense might be available, the attorney could also decide it would be inappropriate to propound such a defense in a given case). We overrule points of error four and five.

### Objectionable Testimony

In appellant's sixth point of error, he asserts the trial court erred, during the punishment phase of the trial, by overruling his objection to Officer W.A. Kelly's testimony.[7] Appellant contends the State did not give timely notice, as requested by appellant, of its intent to introduce evidence of an extraneous offense through Kelly's testimony. Article 37.07 section 3(g) of the Texas Code of Criminal Procedure provides:

> On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence. If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

TEX.CODE CRIM. P. ANN. art. 37.07 § 3(g) (Vernon Supp.2000).[8] A trial court's rul-

---

6. We note that the State argues in its brief that counsel's failure to make a request for the concurrent causation instruction could be sound trial strategy. The State points out that the jury could have considered such an instruction as some measure of admission by appellant that he was intoxicated, undermining appellant's strongly maintained position that he was not intoxicated.

7. Officer Kelly testified that on a different occasion, sometime in 1993 or 1994, he had stopped appellant for speeding. While con-

versing with appellant, Kelly detected an odor of alcohol. Appellant acknowledged that he had been at a bar. Kelly knew that appellant was a state senator and this intimidated him. As a result, instead of having appellant perform any sobriety tests, he wrote him a traffic ticket and let him go.

8. Rule 404(b) provides that reasonable notice must be given in advance of trial when requested. *See* TEX.R. EVID. 404(b).

ings as to the admissibility of extraneous offense evidence are reviewed under an abuse of discretion standard. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex.Crim.App. 1996).

■ To trigger the State's obligation to comply with the notice requirement in article 37.07, a defendant may: (1) serve the State with a request for notice, or (2) file a discovery motion requesting the court to order such notice and secure a ruling thereon. *Mitchell v. State*, 982 S.W.2d 425, 427 (Tex.Crim.App.1998); *see also Espinosa v. State*, 853 S.W.2d 36, 38–39 (Tex.Crim.App.1993) (examining the notice requirements under rule 404 of the Texas Rules of Evidence). Here, the State's obligation to give notice of its intent to introduce extraneous offense evidence was triggered by appellant's letter directed to the district attorney.[9] Appellant objected to Kelly's testimony, claiming he did not receive written notice of the prosecutor's intent to present Kelly prior to trial. The prosecutor replied that she did not discover Kelly had information concerning an extraneous offense until after the trial had started, and that as soon as she did discover the information, she notified appellant's attorney. Appellant's attorney confirmed that he learned of Kelly's potential testimony as the prosecutor indicated. This oral notification took place eight days before Kelly was presented as a witness at the punishment phase.

■ Considering that it was impossible for the prosecutor to notify appellant prior to trial of her intent to introduce extrane-

ous offense evidence through Kelly's testimony and that appellant was notified eight days before Kelly testified, we find the trial court did not abuse its discretion in allowing Kelly's testimony. Accordingly, we overrule appellant's sixth point of error. *See Nance v. State*, 946 S.W.2d 490, 491–93 (Tex.App.—Fort Worth 1997, pet. ref'd) (finding that because the purpose of the notice requirement is to avoid unfair surprise and trial by ambush, given the circumstances, the notice provided was sufficient).

In his seventh point of error, appellant contends the trial court erred in overruling his objection to Officer J. Garnier's testimony because the evidence was: (1) not about an extraneous offense or a bad act; (2) not relevant to punishment; and (3) more prejudicial than probative.[10] In his eighth point of error, appellant contends the trial court erred in overruling his objection to Jeff Viet's testimony at the punishment phase of the trial because the evidence misled the jury and confused the issues.

■ Garnier testified that he stopped appellant in 1994 for a traffic offense, and, as he was requesting appellant to produce his driver's license, Garnier detected the odor of alcohol on appellant's breath. Appellant produced his driver's license and identified himself as a senator. Garnier, who was not yet trained in sobriety tests, called his supervisor and advised him of the circumstances. Garnier's supervisor told him to "do what you have to do." Garnier interpreted this to be an instruc-

9. The letter states: "Pursuant to the dictates of Rule 404(b) of the Texas Rules of Criminal Evidence, Defendant Henderson hereby requests notice in advance of trial of the State's intention to introduce such 'other crimes' evidence in its case in chief, and a disclosure of that evidence."

10. Appellant also asserts under this point of error that he did not receive written notice of the State's intent to introduce Garnier's testimony at the punishment phase of the trial. However, appellant's trial counsel, in stating his objection to the admission of this evi-

dence, stated "It's my understanding that this witness will testify according to the written notice, that he apparently called—the written notice I believe states that he called, made a call to a sergeant and the sergeant said something to the effect that he's a state senator, don't charge him or something like that." Although the State's written notice does not appear in the record on appeal, we conclude from this statement that appellant did have notice of the State's intent to introduce Garnier's testimony at the punishment phase of the trial.

tion to "just let it go." Garnier then allowed appellant to leave without issuing him a citation. Garnier testified that if appellant had not been a senator, he probably would have summoned another officer to conduct sobriety tests on appellant.

Jeff Viet testified that appellant rearended him while he was stopped at a red light in 1996. Before appellant was transported to the hospital, Viet spoke to him, and Viet detected the odor of alcohol on appellant's breath.

The admissibility of evidence at the punishment stage of a trial is controlled by article 37.07. *See* TEX.CODE CRIM. P. ANN. art. 37.07 (Vernon Supp.2000). Section 3(a) provides in pertinent part:

> [E]vidence may be offered ... as to *any matter the court deems relevant to sentencing, including but not limited to* the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act ... regardless of whether [the defendant] has previously been charged with or finally convicted of the crime of act.

*Id.* at § 3(a) (emphasis added). A trial court's ruling as to the admissibility of evidence under article 37.07 is reviewed under an abuse of discretion standard. *Mitchell*, 931 S.W.2d at 953.

Appellant first argues that Officer Garnier's testimony was inadmissible because Garnier did not issue appellant a traffic citation or arrest him. However, article 37.07 specifically states it is unnecessary for an offense or bad act to have resulted

in an arrest or conviction. *See also Brown v. State*, 6 S.W.3d 571, 583 (Tex.App.—Tyler 1999, pet. ref'd).

■ Appellant also complains that Garnier's testimony does not show that appellant committed an "extraneous offense" or "bad act." However, the plain language of article 37.07, section 3(a) indicates that evidence of a defendant's conduct may be admissible even if the conduct does not constitute an offense or bad act.

Next, appellant contends that Garnier's testimony was not relevant to punishment, and that the prejudicial effect of his testimony outweighed any probative value.[11]

■ Appellant was convicted of three counts of intoxication assault. During the punishment phase of the trial, Garnier revealed that, during his traffic stop of appellant on a previous occasion, he smelled the odor of alcohol on appellant's breath, resulting in reasonable suspicion meriting further detention for a field sobriety test. The trial court concluded that appellant's drinking, and then driving, on previous occasions was relevant to his punishment for DWI assault; we cannot say this was an abuse of discretion.

■ There is a presumption that relevant evidence is more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 388 (Tex.Crim.App.1990)(op. on reh'g). Moreover, the danger of unfair prejudice must *substantially outweigh* the probative value of the evidence to render relevant evidence inadmissible under Rule 403. *Cohn v. State*, 849 S.W.2d 817, 820 (Tex.Crim.App.1993). "Unfair prejudice" does not mean that the evidence injures the opponent's case—the central point of offering evidence. *Cohn*, 849 S.W.2d at 820. Rather, it refers to an "undue tendency to suggest decision on an improper

---

11. Admissibility of punishment phase evidence that the trial court deems relevant is still subject to a Rule 403 analysis. *See Meadows v. State*, 998 S.W.2d 318, 322 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd). That is, if the probative value of evidence is substantially outweighed by the prejudicial effect, by

the possibility of confusing or misleading the jury, or by the possibility of delay or cumulation, then the evidence should be excluded by the trial court. *See* TEX.R. EVID. 403; *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex.Crim.App.1990) (op. on reh'g); *Meadows*, 998 S.W.2d at 322.

basis, commonly, though not necessarily, an emotional one." *Id.* We cannot say that the probative value of Garnier's testimony was substantially outweighed by the danger of unfair prejudice. Thus, the trial court's ruling was not an abuse of discretion. *See Rogers v. State,* 991 S.W.2d, 263, 266–67 (Tex.Crim.App.1999).

Appellant contends Jeff Viet's testimony confused and misled the jury about appellant's prior criminal history. Confusion of the issues occurs when introduction of the contested evidence raises "the probability that the proof and the answering evidence that it provokes may create a side issue that will unduly distract the jury from the main issues." *Smith v. State,* 959 S.W.2d 1, 17 (Tex.App.—Waco 1997, pet. ref'd).

Contrary to appellant's position, we consider Viet's testimony, along with the testimony of Officers Kelly and Garnier, to be relevant punishment evidence illustrating appellant's propensity for drinking and driving. Viet's testimony about the wreck further showed the danger appellant poses when he engages in drinking and driving—appellant rammed into Viet's stopped car. Viet's testimony was not confusing or misleading.

We cannot say that the trial court abused its discretion by admitting the testimony. Accordingly, we overrule appellant's seventh and eighth points of error.

We affirm the judgments.