

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


### NO. 2-07-228-CR


MARCUS MCDONALD                                          APPELLANT

V.

THE STATE OF TEXAS                                             STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Marcus McDonald appeals his conviction for felony driving while intoxicated (DWI). In his sole point, McDonald complains that the evidence is factually insufficient to support the jury's verdict. We will affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

# I. BACKGROUND FACTS

On September 2, 2006, Officer Nathan Coomer of the Grand Prairie Police Department received a dispatch call regarding a possibly intoxicated driver traveling westbound on I-20 in a black Ford SUV. Officer Coomer responded to the call and turned on his mobile video unit in his patrol car once he located the described vehicle.

Officer Coomer observed the driver, McDonald, turn on his right blinker, turn it off, turn on his left blinker, attempt to move into the left lane, and then exit right at Great Southwest Parkway with his left blinker still on. Officer Coomer then observed McDonald move from side to side down the exit ramp. McDonald then made a "normal" turn into a parking lot and into a parking space at a convenience store. Officer Coomer testified that this occurred in light to moderate traffic.

Officer Coomer asked McDonald to roll down his window and detected alcohol on McDonald's breath.[2] He also noticed that McDonald's eyes were bloodshot and watery. McDonald told Officer Coomer that he had not had

---

[2] Officer Coomer testified that he detected the odor of alcohol even though he had to stand a "good distance" from McDonald because of a curb next to the car and deduced that the odor must have been fairly substantial to reach that far.

anything to drink that night and handed his driver's license to Officer Coomer with no problems.

At this time, Officer Coomer called Officer Michael Diaz to complete the investigation so that, if necessary, he could respond to other calls on the busy Labor Day weekend. Officer Diaz is a Drug Recognition Expert, a position that he obtained through a two-week training program in which he studied and evaluated the effects of various drugs, including alcohol, on the human body. On the night of the offense, the Grand Prairie Police Department had employed Officer Diaz to work on a specialized DWI enforcement unit that the Texas Department of Transportation funds during peak times for alcohol-related collisions, usually around holidays. Officer Coomer remained at the scene as a "cover officer," ensuring that the area remained safe during the completion of the interview.

When he arrived at the scene, Officer Diaz asked McDonald to step out of the car. When he came into contact with him, he noticed that McDonald's eyes were bloodshot and watery. He also detected a faint odor of alcohol that was masked by mint gum.[3] Officer Diaz asked McDonald to spit out his gum, but McDonald refused. Officer Diaz testified that he also noticed a circular

---

[3] Officer Coomer testified that McDonald did not have anything in his mouth to mask the smell of alcohol when he first came into contact with him.

3

sway when he asked McDonald to put his feet together, which Officer Diaz stated was an indicator of intoxication.

Officer Diaz asked McDonald if he had suffered any injuries to his neck or back, and McDonald replied that he had "all those problems," explaining that he had suffered injuries while playing football.[4] Officer Diaz then attempted to administer the horizontal gaze nystagmus (HGN) test, but McDonald told him that he could not follow the light because of his injuries. When Officer Diaz told him that he did not need to move his neck, only his eyes, McDonald still maintained that he could not perform the test. McDonald continued to refuse to take the test, reiterating that he had neck injuries and stating that he wore contact lenses. Officer Diaz testified that McDonald was extremely agitated throughout this process.

At that time, Officer Diaz confirmed with Officer Coomer that McDonald had alcohol on his breath when he initiated the stop and then effectuated the arrest. Officer Diaz handcuffed McDonald and attempted to search his person for weapons. Officer Diaz testified that he felt McDonald moving his arms

---

[4] Officer Coomer recalled that McDonald had told him that he suffered the injuries playing football in high school. We could not discern what exactly McDonald said during their conversation about the injuries because of the audio quality on the video. Officer Coomer also stated that he thought McDonald was a "fit human being" and that he had no reason not to believe that McDonald had played football and suffered "some kind of injuries."

4

during the search, leading him to believe that McDonald did not want him to see something in his pockets. After telling McDonald twice to stop moving, Officer Diaz forcefully transported him to the hood of the police car. There, Officer Diaz completed his search, found no weapons, and placed McDonald in the police vehicle.[5] The officers then searched McDonald's car and found a cup with approximately one inch of clear tinted liquid. Officer Diaz tested the ambient air above the liquid using a portable breath test, and the air tested positive for alcohol.

Once at the police station in the DWI interview room, Officer Diaz handed McDonald a piece of paper and asked McDonald to follow along with him as he read to McDonald his *Miranda* warnings and statutory rights regarding the breathalyzer and blood test.[6] Instead of listening to Officer Diaz, McDonald proceeded to read the rights and warnings aloud, by himself. After he finished, Officer Diaz re-read the rights and warnings to McDonald. McDonald then began to yell at Officer Diaz and call him offensive names, repeatedly stating

---

[5] After placing McDonald in the police vehicle, Officer Diaz took the video from Officer Coomer's vehicle and placed it in his vehicle so that he could have coverage of the initial stop and the transportation all on one video. The jury reviewed the video at trial.

[6] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966); TEX. TRANSP. CODE ANN. § 724.015 (Vernon Supp. 2008).

5

that he had already read the information. McDonald refused the breathalyzer test and later attempted to walk out of the interview room. Officer Diaz described McDonald's behavior as "cyclic," meaning that McDonald started off calm and then his temper escalated to the point where he began to yell and act "unruly."[7] Officer Diaz testified that he considered McDonald's belligerent behavior to be an additional sign of intoxication.

McDonald did not testify or question any of his own witnesses; therefore, the evidence at trial consisted only of the officers' testimony as well as the video of the arrest and of the events that occurred in the interview room.

McDonald was charged with felony DWI because he had been twice convicted of DWI prior to his arrest on September 2, 2006. *See* TEX. PENAL CODE ANN. § 49.09(b)(2) (Vernon Supp. 2008). The jury found McDonald guilty, and the trial court assessed punishment at six years' confinement.

## II. FACTUAL SUFFICIENCY

In his sole point, McDonald complains that the evidence presented at trial is factually insufficient to support the jury's verdict.

---

[7] The events in the DWI interview room were also recorded and played for the jury.

6

**A. Standard of Review**

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in

7

the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

### B.    Driving While Intoxicated

A person commits the offense of driving while intoxicated if he operates a motor vehicle while intoxicated in a public place. TEX. PENAL CODE ANN. § 49.04 (Vernon 2003). Here, the indictment alleged that McDonald operated a motor vehicle while intoxicated by not having the normal use of his mental or physical faculties by reason of introduction of alcohol into his body. *See id.* § 49.01(2)(A).

McDonald first argues that the evidence is so weak as to undermine the confidence in the jury's verdict. We disagree. An arresting officer's testimony is probative evidence of intoxication. *See Henderson v. State*, 29 S.W.3d 616,

622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Here, two police officers testified that, in their opinions, McDonald was intoxicated as he operated a motor vehicle. Officer Coomer, who initially stopped McDonald, testified that he formed his opinion that McDonald was intoxicated based on McDonald's driving behavior, the odor of alcohol on his breath, his bloodshot and watery eyes, his demeanor, the fact that he swayed when he attempted to stand still, his attempt to mask the odor of his breath by putting gum in his mouth, and by making up "absurd excuses" for not taking the HGN test. Similarly, Officer Diaz, an expert in drug recognition, testified that, at the time of the arrest, he concluded that McDonald was intoxicated based on his bloodshot and watery eyes, his driving behavior relayed to him by Officer Coomer, his demeanor, his refusal to perform the HGN test because of alleged neck injuries, and the odor of alcohol on McDonald's breath masked by gum, which Officer Diaz stated is usually an indicator that someone is trying to hide alcohol on his breath. Officer Diaz also testified that when he first questioned McDonald about where he had come from, McDonald stated that he had left his girlfriend's house and was going to his wife's house. When he asked him a second time, McDonald stated that he was coming from his wife's house. Officer Diaz testified that McDonald's trouble with understanding the question was another indicator of McDonald's intoxication.

9

Additionally, the jury could have taken McDonald's refusal to take the breathalyzer test as evidence of his guilt. *See* TEX. TRANSP. CODE ANN. § 724.061 (Vernon 1999); *Finley v. State*, 809 S.W.2d 909, 913 (Tex. App.—Houston [14th Dist.] 1991, writ ref'd) (holding that the jury can use the defendant's refusal to take a breathalyzer test as evidence of guilt). Likewise, the jury could have inferred that McDonald was intoxicated by his refusal to perform the HGN test. *See Barraza v. State*, 733 S.W.2d 379, 381 (Tex. App.—Corpus Christi 1987), *aff'd*, 790 S.W.2d 654 (Tex. Crim. App. 1990) (stating that "a request to perform a field sobriety test is sufficiently similar to a request to perform a breathalyzer test so as to allow an analogy to the law governing the admissibility of evidence of a suspect's refusal to take a breathalyzer test"). In making such an inference, the jury, as the fact-finder, was entitled to either believe or disbelieve that McDonald had suffered neck injuries, or it could have chosen to believe Officer Diaz when he testified that the HGN test does not require a person to move his neck. There was no testimony regarding how the use of contact lenses would affect, if at all, McDonald's ability to perform the HGN test.

Further, there is evidence that McDonald had a cup in his car with one inch of liquid that contained alcohol. The jury also had the opportunity to review the video and personally observe the circumstances that the officers

stated formed the basis of their opinions, including McDonald's driving behavior, his swaying, and his demeanor before and after his arrest.[8]

Accordingly, in viewing all the evidence in a neutral light, we cannot say that the evidence is so weak that the jury's determination is clearly wrong and manifestly unjust. *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (stating that evidence of intoxication may include, among other things, slurred speech, bloodshot eyes, odor of alcohol on the person or breath, and unsteady balance); *Dukes v. State*, No. 02-07-00053-CR, 2008 WL 902787, at *4 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op.) (not designated for publication) (holding that the evidence was factually sufficient when it showed, among other things, that the defendant's speech was slurred, his eyes were bloodshot and watery, he refused the breathalyzer test, and the arresting officer found a three-quarters empty beer can that was "cool to the touch" under the driver's seat); *see also Cloud v. State*, No. 14-07-00847-CR, 2008 WL 2520826, at *2 (Tex. App.—Houston [14th Dist.] June 24, 2008, no pet.) (mem. op.) (not designated for publication) (holding that the evidence was factually sufficient when the arresting officer testified that the defendant

---

[8] We have reviewed the video, and the officers' testimony regarding McDonald's driving behavior and demeanor are supported by the video. It also appears that McDonald swayed slightly as he stood with his feet together, but the viewing angle of the video makes it hard to discern this fact.

11

smelled of alcohol, had bloodshot eyes, had slurred speech, refused to perform any field sobriety test, and refused the breathalyzer test).

McDonald argues next that the evidence contrary to the verdict demonstrates that he was not intoxicated and explains his unruly demeanor. He first points to evidence showing that he made a normal turn into the convenience store, produced his driver's license without a problem, exited his vehicle in an appropriate manner, and spoke to the officers in a normal manner. He also asserts that he did not commit a major traffic violation given the light to moderate traffic and that his bloodshot eyes could have been attributed to the fact that the stop occurred at 12:46 a.m. Additionally, he contends that alcohol did not cause his unruly demeanor; rather, Officer Diaz agitated him when he placed him on top of the hood of the car, causing him to yell at and to not cooperate with the officers.

We first note regarding McDonald's demeanor that Officer Diaz testified that it was possible McDonald could have become agitated when he forcefully placed him on the car; however, he went on to state that McDonald was "screaming and yelling" before he placed McDonald on the car. Further, we must give due deference to the fact-finder's determinations regarding McDonald's demeanor and all other matters that McDonald points to in his argument. *See Johnson*, 23 S.W.3d at 8. Even taking the facts singled out by

12

McDonald into consideration, we cannot say, given all the facts presented at trial as described above, that the great weight and preponderance of the evidence contradicts the verdict. *See Watson*, 204 S.W.3d at 414–15. Thus, when viewed in a neutral light, the evidence is not too weak to support a finding of guilt beyond a reasonable doubt and any evidence contrary to the verdict does not greatly outweigh the evidence supporting the conviction. Therefore, we hold that the evidence is factually sufficient to support the jury's verdict and overrule McDonald's sole point.

## IV. CONCLUSION

Having overruled McDonald's sole point, we affirm the trial court's judgment.

PER CURIAM

PANEL: HOLMAN, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: August 27, 2008

13