COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-228-CR

 

 

MARCUS MCDONALD                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 213TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Marcus McDonald appeals his conviction
for felony driving while intoxicated (DWI). 
In his sole point, McDonald complains that the evidence is factually
insufficient to support the jury=s
verdict.  We will affirm.








                                       I.
BACKGROUND FACTS

On September 2, 2006, Officer Nathan Coomer of
the Grand Prairie Police Department received a dispatch call regarding a
possibly intoxicated driver traveling westbound on I-20 in a black Ford
SUV.  Officer Coomer responded to the
call and turned on his mobile video unit in his patrol car once he located the described
vehicle.

Officer Coomer observed the driver, McDonald,
turn on his right blinker, turn it off, turn on his left blinker, attempt to
move into the left lane, and then exit right at Great Southwest Parkway with
his left blinker still on.  Officer Coomer
then observed McDonald move from side to side down the exit ramp.  McDonald then made a Anormal@ turn
into a parking lot and into a parking space at a convenience store.  Officer Coomer testified that this occurred
in light to moderate traffic.








Officer Coomer asked McDonald to roll down his
window and detected alcohol on McDonald=s
breath.[2]  He also noticed that McDonald=s eyes
were bloodshot and watery.  McDonald told
Officer Coomer that he had not had anything to drink that night and handed his
driver=s
license to Officer Coomer with no problems.

At this time, Officer Coomer called Officer
Michael Diaz to complete the investigation so that, if necessary, he could
respond to other calls on the busy Labor Day weekend.  Officer Diaz is a Drug Recognition Expert, a
position that he obtained through a two-week training program in which he
studied and evaluated the effects of various drugs, including alcohol, on the
human body.  On the night of the offense,
the Grand Prairie Police Department had employed Officer Diaz to work on a
specialized DWI enforcement unit that the Texas Department of Transportation
funds during peak times for alcohol-related collisions, usually around
holidays.  Officer Coomer remained at the
scene as a Acover officer,@
ensuring that the area remained safe during the completion of the interview.








When he arrived at the scene, Officer Diaz asked
McDonald to step out of the car.  When he
came into contact with him, he noticed that McDonald=s eyes
were bloodshot and watery.  He also
detected a faint odor of alcohol that was masked by mint gum.[3]  Officer Diaz asked McDonald to spit out his
gum, but McDonald refused.  Officer Diaz
testified that he also noticed a circular sway when he asked McDonald to put
his feet together, which Officer Diaz stated was an indicator of intoxication.

Officer Diaz asked McDonald if he had suffered
any injuries to his neck or back, and McDonald replied that he had Aall
those problems,@ explaining that he had suffered
injuries while playing football.[4]  Officer Diaz then attempted to administer the
horizontal gaze nystagmus (HGN) test, but McDonald told him that he could not
follow the light because of his injuries. 
When Officer Diaz told him that he did not need to move his neck, only
his eyes, McDonald still maintained that he could not perform the test.  McDonald continued to refuse to take the
test, reiterating that he had neck injuries and stating that he wore contact
lenses.  Officer Diaz testified that
McDonald was extremely agitated throughout this process.








At that time, Officer Diaz confirmed with Officer
Coomer that McDonald had alcohol on his breath when he initiated the stop and
then effectuated the arrest.  Officer
Diaz handcuffed McDonald and attempted to search his person for weapons.  Officer Diaz testified that he felt McDonald
moving his arms during the search, leading him to believe that McDonald did not
want him to see something in his pockets. 
After telling McDonald twice to stop moving, Officer Diaz forcefully
transported him to the hood of the police car. 
There, Officer Diaz completed his search, found no weapons, and placed
McDonald in the police vehicle.[5]  The officers then searched McDonald=s car
and found a cup with approximately one inch of clear tinted liquid.  Officer Diaz tested the ambient air above the
liquid using a portable breath test, and the air tested positive for alcohol.








Once at the police station in the DWI interview
room, Officer Diaz handed McDonald a piece of paper and asked McDonald to
follow along with him as he read to McDonald his Miranda warnings and
statutory rights regarding the breathalyzer and blood test.[6]  Instead of listening to Officer Diaz,
McDonald proceeded to read the rights and warnings aloud, by himself.  After he finished, Officer Diaz re-read the
rights and warnings to McDonald. 
McDonald then began to yell at Officer Diaz and call him offensive
names, repeatedly stating that he had already read the information.  McDonald refused the breathalyzer test and
later attempted to walk out of the interview room.  Officer Diaz described McDonald=s
behavior as Acyclic,@ meaning
that McDonald started off calm and then his temper escalated to the point where
he began to yell and act Aunruly.@[7]  Officer Diaz testified that he considered
McDonald=s
belligerent behavior to be an additional sign of intoxication.

McDonald did not testify or question any of his
own witnesses; therefore, the evidence at trial consisted only of the officers=
testimony as well as the video of the arrest and of the events that occurred in
the interview room.

McDonald was charged with felony DWI because he
had been twice convicted of DWI prior to his arrest on September 2, 2006.  See TEX. PENAL CODE ANN. ' 49.09(b)(2)
(Vernon Supp. 2008).  The jury found
McDonald guilty, and the trial court assessed punishment at six years= confinement.

                                      II.
FACTUAL SUFFICIENCY

In his sole point, McDonald complains that the
evidence presented at trial is factually insufficient to support the jury=s
verdict.








A.     Standard of Review

When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Watson v.
State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s determination is manifestly
unjust.  Watson, 204 S.W.3d at 414B15, 417;
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the
fact-finder=s determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

B.     Driving While Intoxicated

A person commits the offense of driving while
intoxicated if he operates a motor vehicle while intoxicated in a public
place.  TEX. PENAL CODE ANN. ' 49.04
(Vernon 2003).  Here, the indictment
alleged that McDonald operated a motor vehicle while intoxicated by not having
the normal use of his mental or physical faculties by reason of introduction of
alcohol into his body.  See id. ' 49.01(2)(A).








McDonald first argues that the evidence is so
weak as to undermine the confidence in the jury=s
verdict.  We disagree.  An arresting officer=s
testimony is probative evidence of intoxication.  See Henderson v. State, 29 S.W.3d 616,
622 (Tex. App.CHouston [1st Dist.] 2000, pet.
ref=d).  Here, two police officers testified that, in
their opinions, McDonald was intoxicated as he operated a motor vehicle.  Officer Coomer, who initially stopped
McDonald, testified that he formed his opinion that McDonald was intoxicated
based on McDonald=s driving behavior, the odor of
alcohol on his breath, his bloodshot and watery eyes, his demeanor, the fact
that he swayed when he attempted to stand still, his attempt to mask the odor
of his breath by putting gum in his mouth, and by making up Aabsurd
excuses@ for not
taking the HGN test.  Similarly, Officer
Diaz, an expert in drug recognition, testified that, at the time of the arrest,
he concluded that McDonald was intoxicated based on his bloodshot and watery
eyes, his driving behavior relayed to him by Officer Coomer, his demeanor, his
refusal to perform the HGN test because of alleged neck injuries, and the odor
of alcohol on McDonald=s breath masked by gum, which
Officer Diaz stated is usually an indicator that someone is trying to hide
alcohol on his breath.  Officer Diaz also
testified that when he first questioned McDonald about where he had come from,
McDonald stated that he had left his girlfriend=s house
and was going to his wife=s house.  When he asked him a second time, McDonald
stated that he was coming from his wife=s
house.  Officer Diaz testified that
McDonald=s
trouble with understanding the question was another indicator of McDonald=s
intoxication.








Additionally, the jury could have taken McDonald=s
refusal to take the breathalyzer test as evidence of his guilt.  See TEX. TRANSP. CODE ANN. ' 724.061
(Vernon 1999); Finley v. State, 809 S.W.2d 909, 913 (Tex. App.CHouston
[14th Dist.] 1991, writ ref=d)
(holding that the jury can use the defendant=s
refusal to take a breathalyzer test as evidence of guilt).  Likewise, the jury could have inferred that
McDonald was intoxicated by his refusal to perform the HGN test.  See Barraza v. State, 733 S.W.2d 379,
381 (Tex. App.CCorpus Christi 1987), aff=d, 790
S.W.2d 654 (Tex. Crim. App. 1990) (stating that Aa
request to perform a field sobriety test is sufficiently similar to a request
to perform a breathalyzer test so as to allow an analogy to the law governing
the admissibility of evidence of a suspect=s
refusal to take a breathalyzer test@).  In making such an inference, the jury, as the
fact-finder, was entitled to either believe or disbelieve that McDonald had
suffered neck injuries, or it could have chosen to believe Officer Diaz when he
testified that the HGN test does not require a person to move his neck.  There was no testimony regarding how the use
of contact lenses would affect, if at all, McDonald=s
ability to perform the HGN test.








Further, there is evidence that McDonald had a
cup in his car with one inch of liquid that contained alcohol.  The jury also had the opportunity to review
the video and personally observe the circumstances that the officers stated
formed the basis of their opinions, including McDonald=s
driving behavior, his swaying, and his demeanor before and after his arrest.[8]








Accordingly, in viewing all the evidence in a
neutral light, we cannot say that the evidence is so weak that the jury=s
determination is clearly wrong and manifestly unjust.  See Cotton v. State, 686 S.W.2d 140,
142 n.3 (Tex. Crim. App. 1985) (stating that evidence of intoxication may
include, among other things, slurred speech, bloodshot eyes, odor of alcohol on
the person or breath, and unsteady balance); Dukes v. State, No. 02‑07‑00053‑CR,
2008 WL 902787, at *4 (Tex. App.CFort Worth
Apr. 3, 2008, no pet.) (mem. op.) (not designated for publication) (holding
that the evidence was factually sufficient when it showed, among other things,
that the defendant=s speech was slurred, his eyes
were bloodshot and watery, he refused the breathalyzer test, and the arresting
officer found a three‑quarters empty beer can that was Acool to
the touch@ under the driver=s seat);
see also Cloud v. State, No. 14-07-00847-CR, 2008 WL 2520826, at *2
(Tex. App.CHouston [14th Dist.] June 24,
2008, no pet.) (mem. op.) (not designated for publication) (holding that the
evidence was factually sufficient when the arresting officer testified that the
defendant smelled of alcohol, had bloodshot eyes, had slurred speech, refused
to perform any field sobriety test, and refused the breathalyzer test).

McDonald argues next that the evidence contrary
to the verdict demonstrates that he was not intoxicated and explains his unruly
demeanor.  He first points to evidence
showing that he made a normal turn into the convenience store, produced his driver=s
license without a problem, exited his vehicle in an appropriate manner, and
spoke to the officers in a normal manner. 
He also asserts that he did not commit a major traffic violation given
the light to moderate traffic and that his bloodshot eyes could have been
attributed to the fact that the stop occurred at 12:46 a.m.  Additionally, he contends that alcohol did
not cause his unruly demeanor; rather, Officer Diaz agitated him when he placed
him on top of the hood of the car, causing him to yell at and to not cooperate
with the officers.








We first note regarding McDonald=s
demeanor that Officer Diaz testified that it was possible McDonald could have
become agitated when he forcefully placed him on the car; however, he went on
to state that McDonald was Ascreaming
and yelling@ before he placed McDonald on
the car.  Further, we must give due
deference to the fact-finder=s
determinations regarding McDonald=s
demeanor and all other matters that McDonald points to in his argument.  See Johnson, 23 S.W.3d at 8.  Even taking the facts singled out by McDonald
into consideration, we cannot say, given all the facts presented at trial as
described above, that the great weight and preponderance of the evidence
contradicts the verdict.  See Watson,
204 S.W.3d at 414B15.  Thus, when viewed in a neutral light, the
evidence is not too weak to support a finding of guilt beyond a reasonable
doubt and any evidence contrary to the verdict does not greatly outweigh the
evidence supporting the conviction. Therefore, we hold that the evidence is
factually sufficient to support the jury=s
verdict and overrule McDonald=s sole
point.

                                          IV.
CONCLUSION

Having
overruled McDonald=s sole point, we affirm
the trial court=s judgment.

 

 

 

PER
CURIAM

 

PANEL:  HOLMAN, DAUPHINOT, and GARDNER, JJ.

 

DO NOT PUBLISH

TEX. R. APP. P. 47.2(b)

 

DELIVERED:  August 27, 2008











[1]See TEX. R. APP. P. 47.4.





[2]Officer Coomer testified
that he detected the odor of alcohol even though he had to stand a Agood distance@ from McDonald because of
a curb next to the car and deduced that the odor must have been fairly
substantial to reach that far.





[3]Officer Coomer testified
that McDonald did not have anything in his mouth to mask the smell of alcohol
when he first came into contact with him.





[4]Officer Coomer recalled
that McDonald had told him that he suffered the injuries playing football in
high school.  We could not discern what
exactly McDonald said during their conversation about the injuries because of
the audio quality on the video.  Officer
Coomer also stated that he thought McDonald was a Afit human being@ and that he had no
reason not to believe that McDonald had played football and suffered Asome kind of injuries.@





[5]After placing McDonald in
the police vehicle, Officer Diaz took the video from Officer Coomer=s vehicle and placed it
in his vehicle so that he could have coverage of the initial stop and the
transportation all on one video.  The
jury reviewed the video at trial.





[6]See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct.
1602 (1966); TEX. TRANSP. CODE ANN. ' 724.015 (Vernon
Supp. 2008).





[7]The events in the DWI
interview room were also recorded and played for the jury.





[8]We have reviewed the
video, and the officers= testimony regarding
McDonald=s driving behavior and demeanor
are supported by the video.  It also
appears that McDonald swayed slightly as he stood with his feet together, but
the viewing angle of the video makes it hard to discern this fact.