# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00784-CR

**Marcus Anthony Perkins, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. C-1-CR-12-216472, HONORABLE BRANDY MUELLER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After the police responded to a car accident involving Marcus Anthony Perkins, Perkins was charged with driving while intoxicated. *See* Tex. Penal Code § 49.04. At the end of the trial, the trial court found Perkins guilty and assessed his punishment at 120 days' confinement. *See id.* § 49.04(b) (explaining that offense is class B misdemeanor); *see also id.* § 12.22 (providing that class B misdemeanor is punishable by confinement up to 180 days). Subsequent to the trial court issuing its judgment, Perkins filed this appeal. We will affirm the trial court's judgment of conviction.

## DISCUSSION

In his sole issue on appeal, Perkins alleges that the evidence was legally insufficient to support a determination that he was intoxicated. When making this argument, Perkins argues that the evidence could have also supported a conclusion that he sustained a concussion from the

collision. Moreover, Perkins notes that no field-sobriety tests were performed, that no breath test was given, and that no blood-alcohol-concentration test was ordered.

Under the Penal Code, an individual commits the offense of driving while intoxicated if he operates "a motor vehicle in a public place" while he is intoxicated. *See* Tex. Penal Code § 49.04. Moreover, the Penal Code explains that the term intoxicated means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." *Id.* § 49.01(2)(A).

In a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this analysis, a reviewing court must bear in mind that it is the fact-finder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Furthermore, reviewing courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Moreover, reviewing courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

During the trial, Officer Andrew McRae was called to the stand to testify about what he observed when he responded to the scene of the accident and regarding the events leading up to

2

Perkins's arrest. Regarding the collision, Officer McRae explained that Perkins drove into a parked car, that it "was a very minor collision," that "there was no airbag deployment," that the collision was not a "head-on" one, that Perkins's vehicle "grazed" the other one, that the only damage to Perkins's vehicle was a dented bumper and some "scrapes . . . along the front right quarter panel," and that it did not appear as though Perkins's vehicle had been moving at a high rate of speed. *Cf. Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) (explaining that fact that defendant crashed into inanimate object is factor that may be considered when deciding whether he was intoxicated); *Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (explaining that diagnosis of head trauma did not render evidence of intoxication insufficient because injury did not undermine evidence of intoxication unrelated to injury, including manner in which accident resulted). In his testimony, Officer McRae discussed how he tried to ascertain whether Perkins had sustained any injuries and how he asked EMS to evaluate Perkins.

Regarding his observations of Perkins, Officer McRae recalled that after the EMS personnel finished treating Perkins, he asked Perkins questions about the incident and that the answers to those questions as well as Perkins's accompanying behavior led him to believe that Perkins was intoxicated. *See Henderson*, 29 S.W.3d at 622 (determining that police officer's testimony "that an individual is intoxicated is probative evidence of intoxication"). Specifically, Officer McRae revealed that when he interacted with Perkins, Perkins seemed "really groggy," "was really out of it," "was not entirely aware of his surroundings," "was staggering around," did not believe that he had been in an accident, and "was very slow to respond." Moreover, Officer McRae related that he had to explain things to Perkins "multiple times to gain his compliance" and that

3

Perkins's speech "was very slurred." Furthermore, when Officer McRae was asked whether he thought that Perkins's behavior might have been caused by a concussion, he explained that he thought that the accident was too minor for Perkins to have sustained that kind of injury.

Although Officer McRae testified that he believed that Perkins was intoxicated, he also admitted that Perkins did not smell like alcohol[1] and that he did not ask Perkins to submit to field-sobriety tests because Perkins's balance was so unstable and because Perkins was unable to follow instructions.

In addition to Officer McRae's testimony, the two EMS employees who responded to the scene, Tammy Mezayek and Randall Treffer, also testified regarding their observations of Perkins. In particular, Mezayek explained that she evaluated Perkins at the scene and determined that "he had no medical complaints," that Perkins "met the criteria as far as . . . having present mental capacity," and that there "was no evidence" that Perkins had sustained any serious injuries. Moreover, she discussed how based on her assessment of Perkins, she did not believe that he had a concussion, but Mezayek did testify that Perkins showed signs of intoxication, including slurred speech and "an unsteady gait." *See Cotton v. State*, 686 S.W.2d 140, 143 n.3 (Tex. Crim. App. 1985) (explaining that evidence of intoxication can include slurred speech and unsteady balance). Similarly, Treffer testified that based on his prior experience treating people with concussions, he did not believe that Perkins had a concussion. Specifically, he related that people suffering from concussions will often have visible signs of an injury, will ask the same question repeatedly, and

---

[1] In his testimony, Officer McRae explained that he observed a white powder under Perkins's nostrils, but nothing in the record indicates that any sample was collected or tested.

will not know the answers to personal questions, but he testified that Perkins did not display any of those symptoms.

In her testimony, Mezayek conceded that individuals suffering from a concussion can appear lethargic and fatigued, that they often repeat things, and that Perkins repeatedly stated that he did not understand the contents of a form that she asked him to sign indicating that he was refusing to go to the hospital. However, Mezayek explained that even though Perkins repeatedly stressed that he did not understand the nature of the form, she did not believe this repetition was indicative of a concussion because in her experience individuals suffering from concussions tend to have more of a global impairment. She also revealed that when she looked in Perkins's vehicle, everything appeared "intact" and that she did not see any signs that Perkins had hit his head.[2]

Finally, during the trial, a video taken from Officer McRae's dashboard camera was admitted into evidence. *See Huckabay v. State*, No. 09-09-00336-CR, 2011 Tex. App. LEXIS 1918, at *8 (Tex. App.—Beaumont Mar. 16, 2011, no pet.) (mem. op., not designated for publication)

---

[2] In his brief, Perkins refers to two cases that he contends are "all but identical, in the evidentiary balance," to the circumstances present here and that he asserts compel a finding that the evidence was legally insufficient. *See Thurman v. State*, 317 S.W.2d 737 (Tex. Crim. App. 1958); *Vasquez v. State*, 311 S.W.2d 828 (Tex. Crim App. 1958). However, we find those cases to be distinguishable. In *Vasquez*, the court of criminal appeals determined that the evidence was insufficient to support Vasquez's conviction for driving while intoxicated. 311 S.W.2d at 830. Although a police officer testified about Vasquez's altered state after the accident, evidence was also introduced showing that Vasquez continued to display the same "abnormal behavior . . . up until the time of the trial" and that during the trial Vasquez "was still under treatment by a doctor for injuries received in the wreck." *Id.* at 829. In *Thurman*, the court of criminal appeals concluded that the evidence of Thurman's intoxication was insufficient where the only evidence tending to show that Thurman was intoxicated came from the treating physician who found a bottle of whiskey in Thurman's coat. 317 S.W.2d at 738. During the doctor's treatment of Thurman's injuries, Thurman was unconscious, *id.*, and no evidence was presented describing Thurman's behavior before or after the accident.

5

(providing that if video is admitted into evidence, fact-finder may draw "its own conclusions . . . in deciding whether [defendant] appeared intoxicated"). In the video, Perkins appears unsteady on his feet and nearly loses his balance on several occasions. Further, Perkins's speech is slurred, and he appears to have difficulty understanding Officer McRae's instructions.

In light of all of the evidence summarized above as well as the reasonable inferences that the fact-finder could have made from that evidence and given that the standard of review for legal-sufficiency challenges obligates appellate courts to defer to the fact-finder's resolution of conflicts in the testimony and to review the evidence in the light most favorable to the verdict, *see Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778, *Hooper*, 214 S.W.3d at 16-17; we cannot conclude that the evidence was legally insufficient to support the trial court's determination that Perkins was intoxicated. Accordingly, we overrule Perkins's issue on appeal.

## CONCLUSION

Having overruled Perkins's issue on appeal, we affirm the trial court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:  October 21, 2014

Do Not Publish

6