In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00176-CR

____________


MARTIN LEE GARZA, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 10th District Court 

Galveston County, Texas

Trial Court Cause No. 05CR2294





MEMORANDUM OPINION


 A jury convicted appellant, Martin Lee Garza, of murder and assessed
punishment at forty-five years' confinement. See Tex. Penal Code Ann. §
19.02(b)(1) (Vernon 2003). In four points of error, appellant contends that (1) the
trial court erred in admitting an in-court identification that he claims is the product
of an impermissibly suggestive pretrial identification procedure, (2) the evidence is
legally insufficient to support the conviction, (3) the evidence is factually
insufficient to support the conviction, and (4) appellant was provided ineffective
assistance of counsel at trial. We affirm.

BACKGROUND

 On August 29, 2005 at about 2:00 p.m., while working at a construction job
in the backyard of a house, Miguel Guzman and Pompilio Gonzales were
approached by a man in a neighboring backyard. Guzman approached the man, at
which time the man began to insult him. Gonzales observed the man during the
whole argument, which lasted between 12 and 15 minutes, from a distance of 11 to
18 feet. The man was wearing shorts and no shirt. During the argument, the man
pulled a silver gun from the pocket of his shorts and began to shoot at Gonzales
and Guzman. Guzman was shot and killed, and Gonzales was shot in the arm
before escaping to the front of the house. 

 At the time of the shooting, Officers Fillmore and Raglin were leaving
Queen's Barbecue, two blocks away. Hearing the gunshots, they went toward the
scene and found Gonzales in front of the house, bleeding from his arm. He
directed them to the back of the house, where they found Guzman dead. 

 While speaking with a police officer, Gonzales saw the shooter walking into
Queen's Barbecue, wearing a yellow shirt and blue jeans. Gonzales tried to tell the
officer that the shooter was walking nearby, but could not communicate effectively
due to his inability to speak English. 

 After the police secured the scene, Officer Gomez presented to Gonzales
Donald Hammill for possible identification as the shooter. Gonzales told police
that Hammill was not the shooter. After transferring Gonzales to the hospital, the
police presented appellant to him for identification as the shooter. Gonzales
positively identified appellant as the shooter. At trial, Gonzales again identified
appellant as the shooter.

 Celina Williams, aresident of the house adjacent to the lot where the
shooting took place, and the wife of Donald Hammill, testified that she was in her
house at the time of the shooting. She heard yelling and gunshots from the
neighboring backyard. After hearing the gunshots, she looked out of her kitchen
window and saw "one of the construction workers" with blood on his shirt running
to the front of the house. Her husband left the house to investigate and reentered
holding something wrapped in a towel, which he took upstairs. After her husband
entered the house, Williams went outside to attempt to help Guzman, but he was
already dead. While she was outside, she saw a silver Isuzu Rodeo, which
belonged to appellant, pass through the alley adjacent to her house. Appellant
would use the alley when leaving his house.

 Donald Hammill, Williams's husband, was also in his house at the time of
the shooting. While leaving the bathroom, he heard gunshots coming from the area
behind the house. Upon hearing the gunshots, he looked out a window and saw
appellant walking toward his house. Hammill went outside to see if appellant was
okay. Hammill testified that he knocked on appellant's door and spoke with him
about the shooting. Appellant told him "I don't have my gun" and that he needed
his gun. Hammill told appellant to leave and that he, Hammill, would get the gun. 
When Hammill asked appellant where the gun was located, appellant told him that
he had thrown it at the victim. Hammill then got a towel, used it to pick up the
gun, , and put the gun in his attic in a closed panel behind his water heater. 
Although the exact circumstances are disputed, Hammill eventually told Officer C.
Davies that he had the gun. Officer Davies then took possession of the gun to be
used as evidence in this case.

 Sergeant R. Ochoa conducted gunshot residue tests on Donald Hammill and
appellant. Thomas Rusty White, a forensic chemist with the Department of Public
Safety Crime Laboratory Service, testified that he analyzed the gunshot residue
tests obtained by Sergeant Ochoa. The gunshot residue test for Hammill revealed
no gunshot residue. The test on appellant revealed one particle of gunshot residue. 
White testified that finding gunshot residue on a person does not necessarily mean
he fired a gun, he could have been near a person firing a gun or he could have
touched a surface with gunshot residue on it. Gunshot residue can also be removed
by moving around, wiping your hands, or washing your hands

 Officer E. Gonzales testified that ammunition found in appellant's kitchen
and spent bullet casings found at the scene matched the type used in the gun taken
from Hammill's attic. Additionally, bullets found at the scene had been fired from
the gun. 

 Appellant was apprehended by Officer J. Bertolino at around 4:00 p.m.,
while driving a few blocks from the scene of the crime. Appellant was wearing
jeans and a yellow shirt. Officer E. Gonzales inventoried appellant's car. In the
car, Officer Gonzles found a bank receipt, Court's Exhibit 2, dated August 29,
2005 at 3:04 p.m. Although appellant contends that the receipt would have
exonerated him, it was ruled to be inadmissible hearsay and not allowed into
evidence.

IMPERMISSIBLY SUGGESTIVE PRETRIAL IDENTIFICATION
PROCEDURE


 In his first point of error, appellant contends that the trial court erred in
admitting the testimony of Pompilio Gonzales, in which he identified appellant as
the shooter. Specifically, appellant contends that Gonzales's in-court identification
was inadmissible due to an impermissibly suggestive pretrial identification
procedure that created a high likelihood of irreparable misidentification.

Standard of Review 

 We defer to a trial court's determination of historical facts supported by the
record when the trial court finds facts based upon an evaluation of the credibility
and demeanor of the witnesses. Colgin v. State, 132 S.W.3d 526, 531 (Tex.
App.--Houston [1st Dist.] 2004, pet. ref'd) We similarly defer to the trial court's
rulings on mixed questions of law and fact when they turn on the credibility of
witnesses. Id. We review de novo, however, mixed questions of law and fact that
do not turn on an evaluation of credibility and demeanor. Id. Here, the
admissibility of Gonzales's in-court identification testimony does not turn on a
credibility evaluation, and therefore we review it de novo.

 A pretrial identification procedure may be so suggestive and conducive to
mistaken identification that subsequent use of that identification at trial would deny
the accused due process of law. Burkett v. State, 127 S.W.3d 83, 86 (Tex.
App.--Houston [1st Dist.] 2003, no pet.). We apply a two-step analysis to
determine the admissibility of an in-court identification and ask (1) whether the
pretrial identification procedure was impermissibly suggestive and, if so, (2)
whether the improperly suggestive procedure created a very substantial likelihood
of irreparable misidentification. Id. A defendant bears the burden of establishing
by clear and convincing evidence that the pretrial identification procedure was
impermissibly suggestive. Id. The analysis requires an examination of the totality
of the circumstances surrounding the identification. Id.

Analysis

 Appellant argues that the pretrial identification procedure used by Officer
Gomez was impermissibly suggestive because (1) appellant was the only person
presented to Gonzales and (2) appellant was handcuffed at the time of presentation. 
"The very nature of a single show-up identification conducted in the presence of
police officers is suggestive, but the real inquiry in such a case is whether the
particular confrontation was so unnecessarily suggestive as to deny due process." 
Jackson v. State, 682 S.W.2d 692, 695 (Tex. App.--Houston [1st Dist.] 1984, pet.
ref'd). 

 The court in Garza v. State, 633 S.W.2d 508, 512 (Tex. Crim. App. 1981)
gave several reasons why a single show-up identification may be necessary. First,
by viewing the alleged perpetrator immediately after the commission of the
offense, the witness is allowed to test his recollection while his memory is still
fresh. Id. Additionally, the quick confirmation or denial of identification
expedites the release of innocent suspects. Id. This enables the police to release
the innocent suspect and continue the search for the criminal while he is still within
the area and before he can substantially alter his looks and dispose of the evidence
of the crime. Id. Finally, any possible prejudice caused by the suggestive
procedure can be exposed by rigorous cross-examination of the witness. Id.

 In Cole v. State, 474 S.W.2d 696, 698 (Tex. Crim. App. 1971), the court
recognized that the countervailing policy considerations of preventing the possible
overnight detention of an innocent individual and the possible interruption of the
search for the real criminal may be sufficient to make a single show-up four and
one half hours after the commission of the crime permissible. Similarly, the use in
this case of a single show-up of Hammill immediately after the shooting and
appellant four hours after the shooting, was done to "eliminate and clarify" the
case. By presenting Hammill to Gonzales immediately after the crime, the police
eliminated him as a suspect and were able to continue their search for the real
criminal. Gonzales' decision not to identify Hammill as the shooter is evidence
that, although suggestive, the presentation of appellant to Gonzales for
identification was not unduly suggestive as to deny appellant of due process of
law. Were the presentation of an individual, alone and in handcuffs, always unduly
suggestive, Gonzales would have identified Hammill as the shooter. Instead,
Gonzales immediately told the police that Hammill was not the man who shot him;
Hammill was too young and lived in the front house; the man who shot him lived
in the back house--appellant's house. Additionally, Gonzales's identification of
the killer as the man who lived in appellant's house is evidence that Gonzales had
identified appellant as the killer prior to the identification procedure. 

 Finally, appellant had the opportunity to expose any possible prejudice
during cross-examination. See Garza, 633 S.W.2d at 512. Despite rigorous
questioning by appellant's trial counsel, Gonzales continually affirmed that he
identified appellant as the shooter "because he's the one who shot at me." 
Gonzales testified during cross-examination that he did not identify appellant as
the shooter at the pretrial identification because appellant is the same race, height,
or has similar eyes as the shooter, but because he is the one that shot Gonzales. 
Gonzales did not feel that the police wanted him to identify appellant as the shooter
or that they would be annoyed if he said no. 

 We hold that, under the totality of the circumstances, the presentation of
appellant to Gonzales was not so impermissibly suggestive as to deny appellant
due process of law. We overrule point of error one.LEGAL SUFFICIENCY 

 In his second point of error, appellant contends the evidence is legally
insufficient to support a conviction of murder. A person commits murder if he
intentionally or knowingly causes the death of an individual. Tex. Penal Code
Ann. § 19.02(b)(1). Appellant argues that the evidence was insufficient to identify
him as the shooter beyond a reasonable doubt.

Standard of Review

 When evaluating the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);
Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). The standard is
the same for both direct and circumstantial evidence cases. King v. State, 895
S.W.2d 701, 703 (Tex. Crim. App. 1995). We do not resolve any conflict of fact,
weigh any evidence, or evaluate the credibility of any witnesses, as this is the
function of the trier of fact. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.
Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). 
Instead, our duty is to determine whether both the explicit and implicit findings of
the trier of fact are rational by viewing all the evidence admitted at trial in the light
most favorable to the verdict. See Adelman, 828 S.W.2d at 422. In conducting our
review, we resolve any inconsistencies in the evidence in favor of the verdict. 
Matson, 819 S.W.2d at 843.

Analysis

 Appellant argues that the evidence is legally insufficient to support a
conviction of murder because the testimony of Gonzales, Hammill, and Williams is
unreliable, and because the physical evidence fails to single out appellant as the
shooter. However, when evaluating the legal sufficiency of the evidence, we do
not weigh any evidence or evaluate the credibility of the witnesses. See Adelman,
828 S.W.2d at 418, 421. Therefore, an argument that the witnesses' testimony is
unreliable is inappropriate in a legal sufficiency review.

 Appellant also argues that Gonzales's testimony cannot be considered for
any evidentiary value due to the reasons set out in his first point of error. In a legal
sufficiency review, "an appellate court 'must consider all evidence which the jury
was permitted, whether rightly or wrongly, to consider.'" See Moff v. State, 131
S.W.3d 485, 488 (Tex. Crim. App. 2004)(emphasis in original)(citing Thomas v.
State, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988)). Because the court admitted
Gonzales's testimony, we must consider it as part of our evaluation of the
sufficiency of the evidence. See id.

 In Branch v. State, 774 S.W.2d 781, 786 (Tex. App.--El Paso 1989, pet.
ref'd), a witness testified that he saw the defendant hit the victim on his head in
sufficient light for one or two seconds from a distance of five to seven feet. The El
Paso Court of Appeals held that his testimony was sufficient to identify the
defendant as the murderer. Id. 

 In this case, Gonzales testified that appellant shot both him and Guzman. He
observed appellant from a distance of eleven to eighteen feet for twenty minutes
during the middle of the day and could see the shooter "very well." Additionally,
Hammill testified that he saw appellant walking away from the scene of the crime
and that appellant told him that he threw the gun at Guzman. Evaluating the
evidence in the requisite light, we hold that Gonzales's testimony was legally
sufficient evidence for a rational jury to conclude that appellant was the man who
shot Guzman. See id.

 We overrule appellant's second point of error.

FACTUAL SUFFICIENCY

 In his third point of error, appellant challenges the factual sufficiency of the
evidence. Specifically, he argues that (1) Gonzales's testimony is unreliable due to
an improperly suggestive pretrial identification procedure, (2) Hammill and
Williams's testimony is suspect to the point of discounting it, (3) there is no
physical evidence linking appellant to the crime, and (4) appellant was cooperative
with the police.

Standard of Review 

 In conducting a factual-sufficiency review, we view all of the evidence in a
neutral light, Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997), and will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). Under the first prong of Johnson, we cannot conclude that a
conviction is "clearly wrong" or "manifestly unjust" simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the
second prong of Johnson, we cannot declare that a conflict in the evidence justifies
a new trial simply because we disagree with the jury's resolution of that conflict. 
Id. Before finding that evidence is factually insufficient to support a verdict under
the second prong of Johnson, we must be able to say, with some objective basis in
the record, that the great weight and preponderance of the evidence contradicts the
jury's verdict. Id. In conducting a factual-sufficiency review, we must also
discuss the evidence that the appellant contends most undermines the jury's
verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). The fact-finder alone determines what weight to place on contradictory testimony, because
that determination depends on the fact-finder's evaluation of credibility and
demeanor. Cain, 958 S.W.2d at 408-09. As the determiner of the credibility of
the witnesses, the fact-finder may choose to believe all, some, or none of the
testimony presented. Id. at 407 n.4.

Analysis 

 First, appellant argues that "the jury verdict hinges on the testimony of one
distraught eyewitness subjected to a pre-trial identification procedure that was so
improperly suggestive as to render subsequent in-court identification unreliable". 
We construe this argument to mean that the appellant believes we should disregard
Gonzales's testimony during our review of the factual sufficiency on the evidence. 
However, in evaluating whether the evidence is factually sufficient to sustain a
conviction, "we consider all the evidence that the trial judge permitted the jury to
consider, including erroneously admitted evidence. See Garza v. State, 213
S.W.3d 338, 344 (Tex. Crim. App. 2007). Because we evaluate all of the evidence,
we use Gonzales's testimony as part of our analysis. If appellant's argument
pertains to the credibility of Gonzales's testimony, the argument still fails. The
fact-finder determines the credibility of a witness. Cain, 958 S.W.2d at 407 n.4.

 Second, appellant argues that Hammill's and Williams's testimony is
suspect to the point of discounting it. He argues that Hammill is not credible
because he (1) possessed the gun, (2) did not immediately inform the police that he
possessed the gun, (3) hid the gun in a towel in his attic, and (4) is a felon and drug
user. Appellant argues that Williams's testimony is not credible because she went
outside, leaving her children alone inside, while a killer was on the loose. He
argues that "[i]t is impossible to rationally believe" that she would leave the house
under these circumstances. 

 An appellate court can only assess matters of credibility that can be
determined from a cold appellate record. Johnson, 23 S.W.3d at 8. Here, we
cannot determine from the cold record the credibility of Hammill or Williams. As
such, we defer to the fact-finder's determination of their credibility. Id.

 Third, appellant argues that there is no evidence that links either the bullet
casings found in appellant's apartment or the particle of gunpowder residue found
on appellant's hands to the crime scene. But, this evidence is only a portion of all
the evidence that we weigh in determining the factual sufficiency of the evidence. 
See Cain, 958 S.W.2d at 408. The State presented eyewitness evidence by
Gonzales that appellant was the shooter; testimony by Hammill that the gun is
appellant's; testimony by Hammilll that he saw appellant walk away from the
scene of the crime; testimony by Williams that a car of the same make, model, and
color as appellant's drove by the crime scene shortly after the crime; evidence of
gunshot residue on appellant's hand; and evidence that bullets of the same type
used in the crime were found in appellant's house. We cannot conclude that the
evidence is so weak that the verdict is clearly wrong or manifestly unjust. See
Johnson, 23 S.W.3d at 11.

 Lastly, appellant argues that his cooperation with the police demonstrates
that the verdict is against the great weight of the evidence. We cannot agree that
evidence that appellant chose to cooperate with the police so overwhelms the great
weight of the State's evidence that the verdict is manifestly wrong and unjust.

 We overrule appellant's third point of error.

INEFFECTIVE ASSISTANCE OF COUNSEL

 In his fourth point of error, appellant contends that he was provided
ineffective assistance of counsel at trial. Specifically, he argues that his trial
counsel was ineffective due to a failure to lay the proper predicate to introduce
Court's Exhibit 2, a bank receipt appellant claims exonerates him.

Standard of Review

 To prevail on his claim of ineffective assistance of counsel, appellant must
show that his counsel's performance was deficient, and that there is a "reasonable
probability"--one sufficient to undermine confidence in the result--that the
outcome would have been different but for his counsel's deficient performance. Ex
parte Chandler, 182 S.W.3d 350, 354 (Tex. Crim. App. 2005) (citing Strickland v.
Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984)). The
purpose of the constitutional requirement of effective counsel is to ensure a fair
trial. Id. at 353 n.6 (citing Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). The
"benchmark" for evaluating a claim of claim of ineffectiveness, therefore, is
whether counsel's conduct "so undermined the proper functioning of the
adversarial process" that one cannot rely on the trial "as having produced a just
result." Id. at 353 (citing Strickland, 466 U.S. at 686, 104 S. Ct. at 2064). In that
relatively rare instance, only, may a criminal defendant obtain a new trial on the
grounds that his attorney provided constitutionally deficient assistance. Id. at 353-354 (emphasis added). The constitutional right to counsel ensures the right to
reasonably effective counsel, not errorless counsel whose competency or accuracy
of representation we may judge by hindsight. Stafford v. State, 813 S.W.2d 503,
506 (Tex. Crim. App. 1991). 

 To meet his burden to show that his counsel was constitutionally deficient,
appellant must establish, by a preponderance of the evidence, that his trial counsel
was not acting as "a reasonably competent attorney," and that his advice was not
"within the range of competence demanded of attorneys in criminal cases." Ex
Parte Chandler, 182 S.W.3d at 354 (quoting Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064). Appellant must also show that counsel's constitutionally deficient
performance prejudiced his defense, by demonstrating "a reasonable probability
that, but for counsel's unprofessional errors, the result of the proceeding would
have been different." See id. (citing Strickland, 466 U.S. at 694, 104 S. Ct. at
2068). 

 Under this two-pronged analytical framework, appellant must also overcome
the "strong presumption that counsel's conduct fell within the wide range of
reasonable professional assistance." See id. (citing Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999)). In evaluating counsel's representation under a
Strickland analysis, our review is "highly deferential" because we presume that
counsel's actions "fell within the wide range of reasonable and professional
assistance." Id. (quoting Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002)). Under normal circumstances, the record on direct appeal will not be
sufficient to demonstrate that counsel's representation was so deficient and so
lacking in tactical or strategic decision-making as to overcome the presumption
that counsel's conduct was reasonable and professional. Rylander v. State, 101
S.W.3d 107, 110 (Tex. Crim. App. 2003). 

 A Strickland claim must, therefore, be "firmly founded" in a record that
"affirmatively demonstrate[s]" the meritorious nature of the claim. Goodspeed v.
State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). When the record on direct
appeal is sufficient to prove that counsel's performance was deficient, therefore, an
appellate court "should obviously address the claim . . . ." Robinson v. State, 16
S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). But, when counsel's reasons for
failing to do what the defendant contends should have been done do not appear in
the record, as, for example, when trial counsel has not been afforded an
opportunity to explain his actions, we should not find deficient performance unless
the challenged conduct was "so outrageous that no competent attorney would have
engaged in it." Goodspeed, 187 S.W.3d at 392 (quoting Garcia v. State, 57 S.W.3d
436, 440 (Tex. Crim. App. 2001)). Unless claims of ineffective assistance are
clearly demonstrated of record, therefore, we normally will not speculate to find
trial counsel ineffective when the record is silent on his reasoning or strategy. See
Henderson v. State, 29 S.W.3d 616, 624 (Tex. App.--Houston [1st Dist.] 2000,
pet. ref'd). 

Analysis

 Appellant argues that his trial counsel had sufficient time to produce a
custodian of records or affidavit in order to properly establish the predicate to offer
Court's Exhibit 2, a bank receipt that appellant argues casts doubt upon whether he
had sufficient time to commit the crime. Because there is nothing in the record to
explain counsel's conduct, appellant cannot meet the first prong of the Strickland
test. See id. We cannot conclude that appellant has met his burden of showing that
counsel had no plausible trial strategy in choosing not to obtain a custodian of
records or affidavit, and we will not speculate about the lack of trial strategy
simply because we do not discern any particular strategy or tactical purpose. Id. 







 We overrule appellant's fourth point of error.
Conclusion



 We affirm the judgment of the trial court.





 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Nuchia and Higley.


Do not publish. Tex. R. App. P. 47.2(b)