COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ALFREDO HOLGUIN, | § | No. 08-12-00253-CR |
| Appellant, | § | Appeal from the |
| v. | § | 243rd District Court |
| | § | of El Paso County, Texas |
| THE STATE OF TEXAS, | § | (TC# 20120D01334) |
| Appellee. | § | |

## O P I N I O N

Alfredo Holguin appeals the trial court's judgment convicting him of capital murder and sentencing him to life imprisonment. In three issues, he complains of the sufficiency of the evidence, the admission of evidence, and the jury charge. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The murder victim in this case was Mark Anthony Cedillo. On October 6, 2002, he was taken at gunpoint and forced into the backseat of a brown, four-door sedan displaying Mexican license plates. Cedillo's former uncle by marriage, Jesus Salcido, witnessed the kidnapping. A few minutes later, witnesses driving in the vicinity saw the sedan in a nearby parking lot and two Hispanic men, one larger than the other, assault Cedillo, who crumpled to the ground bleeding. When the men drove away, the witnesses, some of whom had heard gunshots, returned to the

parking lot to attend to Cedillo, who eventually died at the scene from two gunshot wounds to his neck. After talking to Salcido and the other witnesses, law enforcement officers, including former El Paso Police Detective Jesus Pantoja developed Benito Holguin and Appellant as suspects.[1]

Three days after Cedillo's death, Pantoja went to his funeral and showed Salcido photo lineups containing Benito's and Appellant's photographs. Although years later he would not remember having spoken to Pantoja at the funeral, Salcido identified Benito and Appellant from the lineups shown to him that day. Approximately two weeks later, Salcido was shown eight photo lineups—each containing six photographs—at the police station and asked if he recognized any of the individuals in them. Two of the lineups contained Benito's and Appellant's photographs. Again, Salcido identified Benito as the kidnapper and Appellant as the driver. Although Salcido was confident in his identification of Benito, he was not as confident in his identification of Appellant, commenting that "[Appellant] . . . strongly resembles the guy that was driving the brown four-door car."

Appellant was arrested approximately nine years later[2] and charged with capital murder. Before trial, he moved to suppress the identification evidence on the basis that the identification procedure was impermissibly suggestive. The trial court held an evidentiary hearing, during which the State called Pantoja as its only witness.

Pantoja testified that Salcido was shown eight photo lineups, two of which contained photographs of Benito and Appellant, respectively; that the photographs in the lineups were obtained from DPS; and that each lineup depicted Hispanic males with similar characteristics,

---

[1] Benito was Appellant's cousin. He died sometime before Appellant was tried.

[2] Appellant was residing in Juarez, Mexico during the intervening years.

2

including size and build, hair color, facial hair, and clothing. Pantoja further testified he asked Salcido to look through the lineups to see if he recognized anyone. According to Pantoja, he did not tell Salcido which photographs to select or that the lineups contained photographs of the suspected perpetrators. Pantoja testified Salcido selected photographs of Benito and Appellant from the lineups; identified them as the kidnapper and driver, respectively; and circled, dated, and signed the two photographs. On cross-examination, Pantoja acknowledged that photographs of Benito and Appellant had been provided to the media sometime before Salcido identified them from the lineups[3]; however, Pantoja maintained that he did not know if Salcido had seen the photographs distributed to the media and that he never spoke to Salcido about the matter before showing him the lineups.

Defense counsel argued Salcido's identification of Appellant was unreliable because it was tainted by the distribution of Appellant's photograph to the media. The prosecutor countered:

> [O]n the photo lineup, there was mention of whether or not there were photos flashed across the media. I don't think that Detective Pantoja was specific enough about what information was released to the media. And as far as the photo lineup, that is the Defendant's burden on this case. And there was no other information volunteered or given or presented to the Court today as far as this issue was concerned. I believe that Mr. Pantoja said I think at some point there was some sort of media attention to this, but there were no specifics as far as what was flashed and the contents of it. And if you will remember the testimony from Mr. Pantoja, when Mr. Salcedo, the eyewitness, who is right there with the Defendant when this car pulls up and these two individuals kidnapped him, he's very specific. Not only does he say he recognizes these two individuals, he's very specific as to the role each one played. He's saying Alfredo Holguin was the driver of the vehicle and Benito Holguin was the guy who had him at gunpoint and put him in the car. So I don't believe that there was enough information brought to this court to suggest that this photo lineup should be suppressed or that it was tainted by some sort of media release since there wasn't even a media release presented to the Court today to show how it could taint the lineup. Other than that, I think the lineups speak for themselves. They are not suggestive. Mr. Pantoja says he doesn't suggest to Mr. Salcedo, the witness, who to identify and so we believe, on both of these issues, we

---

[3] At trial, Pantoja testified the two photographs were published in the El Paso Times on October 12, 2002.

provided enough information to the Court that you should deny the motion to suppress . . . .

Agreeing that "there was no evidence elicited specifically regarding any possible taint from media exposure" and that "mere speculation" was insufficient to sustain Appellant's burden, the trial court denied the motion to suppress.

At trial, Salcido testified about his out-of-court identification of Appellant and the circumstances attending it. During his testimony, Salcido had difficulty recalling specific details concerning the kidnapping and his out-of-court identification of Appellant. Although Salcido could not remember selecting Benito and Appellant's photographs from the lineups shown to him at the police station, after reviewing his statement, he confirmed that he circled, signed, and dated the two photographs. The State sought the admission of the lineups into evidence, and the trial court admitted them without objection. On cross-examination, Salcido admitted he could not positively identify Appellant as the driver. The State did not ask any of its other witnesses to identify Appellant. During closing arguments, defense counsel argued the State had failed to prove beyond a reasonable doubt that Appellant was the driver.

The jury charge authorized the jury to convict Appellant as a principal actor or as a party to the offense under either Sections 7.02(a)(2)—aider and abettor—or 7.02(b)—coconspirator—of the Texas Penal Code.[4] Appellant objected to the inclusion of Section 7.02(b), arguing it was a

---

[4] The application paragraph of the trial court's charge instructed the jury as follows:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 6th day of October, 2002, in El Paso County, State of Texas that ALFREDO HOLGUIN, did then and there intentionally cause the death of MARK ANTHONY CEDILLO by shooting him with a firearm, and ALFREDO HOLGUIN was in the course of committing or attempting to commit the offense of kidnapping; OR if you find from the evidence beyond a reasonable doubt that Benito Holguin intentionally caused the death of MARK ANTHONY CEDILLO by shooting him with firearm [sic] and Benito Holguin was then and there in course [sic] of committing or attempting to commit the offense of kidnapping, and you further find beyond a reasonable doubt that ALFREDO HOLGUIN,

4

separate theory of liability the submission of which was not supported by the evidence and permitted the jury to convict him of capital murder without having to find he had:

> [T]he specific intent to kill which we would suggest is violative of Texas law, and the State's burden of proof under the Fourteenth Amendment due process clause in Article 1, Section 9 and 19 of the due course of law clause. Basically the State is being able to lessen their burden of proof by using this conspiracy discussion, and there's a huge difference between capital murder and straight murder under Texas law.

The trial court overruled Appellant's objections[5], and the jury found him guilty.[6]

## ADMISSION OF IDENTIFICATION EVIDENCE

In his first issue, Appellant asserts the trial court should have excluded all of the identification evidence because it was obtained by a pretrial identification procedure so impermissibly suggestive as to have led to a substantial likelihood of misidentification. Specifically, he challenges the admission of the photo lineups, Salcido's in-court identification of him, and Pantoja's "testimony regarding Salcido's alleged identifications." We disagree that the trial court abused its discretion by admitting this evidence.[7]

---

acting with intent to promote or assist the commission of the offense, encouraged, directed, aided, or attempted to aid Benito Holguin in the commission of said offense; OR if you find from the evidence beyond a reasonable doubt that Benito Holguin intentionally caused the death of MARK ANTHONY CEDILLO by shooting him with a firearm and Benito Holguin was then and there in the course of committing or attempting to commit the offense of kidnapping, and you further find beyond a reasonable doubt that acting with intent to promote or assist the commission of the offense of kidnapping, ALFREDO HOLGUIN encouraged, solicited, directed, aided or attempted to aid Benito Holguin in the commission or attempted commission of the said kidnapping, if any, and that the shooting of MARK ANTHONY CEDILLO, if there was such, was done in furtherance of the conspiracy to kidnap MARK ANTHONY CEDILLO, if any, and was an offense that should have been anticipated as a result of carrying out the conspiracy, then you will find the Defendant guilty of CAPITAL MURDER as charged in the Indictment. (Verdict Form A)

[5] Holguin also requested that the trial court define the term "conspiracy" for the jury, but the trial court denied his request. Holguin does not complain of this ruling on appeal.

[6] Appellant moved for a new trial, but his motion was overruled by operation of law.

[7] We review a trial court's decision to admit evidence for an abuse of discretion. *Smith v. State*, 683 S.W.2d 393, 404 (Tex.Crim.App. 1984).

5

## 1. Admissibility of Pretrial Photo Lineup

Citing *Cantu v. State*, 738 S.W.2d 249 (Tex.Crim.App. 1987), Appellant argues the photo lineup was impermissibly suggestive because his photograph was shown to Salcido on two separate occasions, first at Cedillo's funeral and then at the police station approximately two weeks later. In *Cantu*, the court acknowledged that showing the victim four photo lineups, three of which contained the appellant's photograph, over a four month span was suggestive, but rejected the appellant's contention that the suggestive procedures tainted the victim's in-court identification so as to create a substantial likelihood of irreparable misidentification. *Id.* at 251-52. Although *Cantu* may be helpful to Appellant, we need not reach the merits of his complaint because he failed to preserve it for appellate review.

When a pretrial motion to suppress evidence is overruled, the defendant need not subsequently object to the admission of the same evidence at trial in order to preserve error, but if the defendant affirmatively states that he has "no objection" to the evidence, he waives any error in its admission. *Holmes v. State*, 248 S.W.3d 194, 200 (Tex.Crim.App. 2008). Here, the State sought the admission of the pretrial photo lineups at trial. When the trial court asked if Appellant had any objections to their admission, defense counsel responded, "No objection, Your Honor." By affirmatively stating at trial that he had no objections to the admission of the evidence in issue, Appellant waived and failed to preserve his right to contest the admission of the evidence on appeal on the grounds raised in his motion to suppress. *See Holmes*, 248 S.W.3d at 200; *Swain v. State*, 181 S.W.3d 359, 368 (Tex.Crim.App. 2005); *Moody v. State*, 827 S.W.2d 875, 889 (Tex.Crim.App. 1992).

## 2. In-Court Identification

6

Next, Appellant contends Salcido's in-court identification of him should not have been admitted because it too was the result of impermissibly suggestive pretrial procedures. However, Salcido was not asked to make, and did not make, an in-court identification of Appellant, and Appellant does not cite to any portion of the record showing otherwise.[8] Nor are we able to find factual support in the record for Appellant's contention.[9] To the contrary, the record establishes Salcido testified about his out-of-court identification of Appellant and the circumstances attending it. Accordingly, Appellant has failed to demonstrate Salcido made an in-court identification of him tainted by impermissible suggestive pretrial procedures. *See Williams v. State*, 402 S.W.3d 425, 431-32 (Tex.App.--Houston [14th Dist.] 2013, pet. ref'd)(noting witness was not asked to identify appellant at trial and rejecting appellant's contention that witness's reference to him as "the defendant" constituted an in-court identification of him).

### 3. Testimony Regarding Photo Lineup Identification

Finally, Appellant asserts his constitutional right to confront Salcido was violated when Pantoja testified to Salcido's out-of-court identification of him at Cedillo's funeral because Salcido's memory loss prevented him from effectively questioning Salcido about that matter. Under these facts, Appellant's Sixth Amendment right to confront Salcido was not implicated by Pantoja's testimony.

To implicate the Confrontation Clause of the Sixth Amendment, an out-of-court statement

---

[8] Pantoja was the only witness asked to identify Appellant at trial.

[9] In his brief, Appellant proclaims:

> As for Salcido's in-court identification, Salcido emphatically denied being able to identify Appellant. In fact, the record clearly conveys Salcido's reluctance to own up to the resemblance notation. 'That's my signature, but I can't remember.'

Notwithstanding that Appellant fails to cite to the record in support of his contention, the snippet of Salcido's testimony on which he relies to make his point relates to Salcido's out-of-court identification of him.

7

must be testimonial in nature and *have been made by a declarant absent from trial*. *Crawford v. Washington*, 541 U.S. 36, 50-52, 59, 124 S.Ct. 1354, 1363-65, 1369, 158 L.Ed.2d 177 (2004); *Woodall v. State*, 336 S.W.3d 634, 641-42 (Tex.Crim.App. 2011)(rejecting appellant's argument that witness's memory loss made her absent for purposes of the Confrontation Clause). Here, Salcido testified at trial and was subject to cross-examination regarding the extrajudicial statement about which Appellant complains. Indeed, Salcido was asked about his statement when cross-examined by defense counsel. Simply because Salcido did not provide the answers to Appellant's satisfaction does not mean he was denied the right to confront him. This is because "'the *Confrontation Clause* guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Woodall*, 336 S.W.3d at 643, *quoting Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). [Emphasis in original]. Thus, as long as the defendant is given the fair and full opportunity "'to probe and expose [forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony[,]'" the right guaranteed by the Confrontation Clause has been satisfied. *Id*., quoting *Fensterer*, 474 U.S. at 22, 106 S.Ct. at 295. In this case, Appellant was afforded that opportunity.

Appellant's first issue is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant argues the evidence was insufficient to support the jury's finding that he was the perpetrator. We disagree.

### *Standard of Review*

8

The legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in determining whether the evidence is sufficient to support a conviction. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010). When reviewing the sufficiency of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89.

Under a legal sufficiency review, we may not substitute our judgment for that of the jurors, who are the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007). We therefore defer to the jurors' resolution of these issues and to their responsibility to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13, *citing Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89. In resolving what the facts are and what reasonable inferences may be drawn from them, the jurors may accept one version of the facts and reject another, and they may reject any part of a witness's testimony, even if uncontradicted. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000), *overruled on other grounds*, *Laster v. State*, 275 S.W.3d 512 (Tex.Crim.App. 2009); *Henderson v. State*, 29 S.W.3d 616, 623 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd).

### Applicable Law

The State bears the burden of proving that the accused is the person who committed the

charged offense.  *See Phillips v. State*, 164 Tex.Crim. 78, 297 S.W.2d 134, 135 (Tex.Crim.App. 1957).   The identity of the accused may be proved by direct evidence, circumstantial evidence, or even inferences.  *See Earls v. State*, 707 S.W.2d 82, 85 (Tex.Crim.App. 1986); *Martin v. State*, 246 S.W.3d 246, 261 (Tex.App.--Houston [14th Dist.] 2007, no pet.); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex.App.--Austin 2000, pet. ref'd).   Proving the identity of the accused in open court, although the preferred procedure, is not required if other evidence establishes the accused's culpability.  *See Conyers v. State*, 864 S.W.2d 739, 740 (Tex.App.--Houston [14th Dist.] 1993, pet. ref'd).   Further, the absence of an in-court identification is merely a factor for the jury to consider in assessing the weight and credibility of the witnesses' testimony; it is not outcome-determinative in and of itself.   *See Meeks v. State*, 897 S.W.2d 950, 954-55 (Tex.App.--Fort Worth 1995, no pet.).

### *Discussion*

When viewed in the light most favorable to the verdict, the evidence adduced at trial was sufficient for the jury to reasonably conclude that Holguin was the perpetrator.   Salcido identified Appellant as the driver in two separate photographic lineups, and the lineup in which Appellant's photograph was circled, signed, and dated was admitted into evidence at trial without objection. Further, Appellant was connected with the crime through other evidence.   He admitted to Pantoja that he drove the sedan identified by the witnesses into the United States approximately two hours before Cedillo's murder.   Although Appellant claimed that he drove back into Mexico shortly thereafter and that the sedan was stolen later that day, Pantoja testified he was unable to find any records verifying Appellant's claim, and records obtained from the Department of Homeland Security established that the sedan crossed the border only once that day.   And the witnesses'

10

description of the driver matched Appellant's physical stature and appearance.

Appellant asserts evidence that he resembled the driver does not constitute proof beyond a reasonable doubt given that Salcido's memory was faulty and no other witness identified him as the driver. However, "[t]he fact that a witness cannot give a positive identification of another person goes to the weight of his testimony, not to its admissibility; therefore, the lack of a positive identification is a jury issue." *Livingston v. State*, 739 S.W.2d 311, 329 (Tex.Crim.App. 1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). In this case, after listening to Salcido's testimony, the jury was within its exclusive province to accept that testimony at face value or to disregard part or all of it as warranted under the circumstances. *See Margraves*, 34 S.W.3d at 919. By finding Appellant guilty, the jury necessarily chose to believe Salcido's testimony, and in conducting our legal sufficiency review, we are prohibited from re-evaluating the weight and credibility of Salcido's testimony or substituting our judgment for that of the jury. *See Williams*, 235 S.W.3d at 750.

Appellant's second issue is overruled.

## CHARGE ERROR

In his third issue, Appellant contends the charge was erroneous in two respects.[10] First, because it impermissibly permitted the jury to convict him of capital murder as a coconspirator under Section 7.02(b) of the Penal Code without requiring the State to prove that he had the specific intent to kill Cedillo. Second, because it did not require that the jurors agree unanimously "on which subsection of 7.02 was applicable . . . ."

---

[10] We review charge error on appeal by determining whether error occurred, and if so, whether that error caused sufficient harm to require reversal. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex.Crim.App. 2005). The degree of harm required for reversal depends on whether the defendant preserved error at trial. *Id*. at 743. If he did, the record must establish only "some harm" to obtain reversal; if he did not, the record must demonstrate "egregious harm." *Id*. at 743-44.

11

*Specific Intent to Kill*

Appellant's first complaint concerns the inclusion of Section 7.02(b) in the jury charge. Appellant does not dispute that the law of parties, including the theory of party responsibility set forth in Section 7.02(b)[11], applies to capital murder. *See Johnson v. State*, 853 S.W.2d 527, 534 (Tex.Crim.App. 1992), *cert. denied*, 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993)("This Court has continually held that the law of parties announced in §§ 7.01 and 7.02 is applicable to capital murder cases."); *Gonzalez v. State*, 296 S.W.3d 620, 629 (Tex.App.--El Paso 2009, pet. ref'd)("The law of parties, as set out in Texas Penal Code § 7.02(b), may be applied in a capital murder case."); *Frank v. State*, 183 S.W.3d 63, 72 (Tex.App.--Fort Worth 2005, pet. ref'd)("The law of parties applies to the offense of capital murder . . . ."). He does, however, dispute the applicability of Section 7.02(b) here. Appellant asserts Section 7.02(b) applies "only in [capital murder] cases where a showing was made of specific intent, or where evidence of a conspiracy was advanced and the murder should have been anticipated."[12] We disagree.

Appellant contends that, although Section 7.02(b) does not itself require a finding of intentional conduct, the State was nonetheless required to prove he possessed the specific intent to kill Cedillo because capital murder is a "result of conduct" offense. He is incorrect. Section 7.02(b) eliminates any necessity on the part of the State to prove Appellant possessed the specific

---

[11] Section 7.02(b) states:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02(b)(West 2011).

[12] Appellant asserts "there was no evidence advanced that the kidnapping was conspired over, nor was it shown that the murder should have been anticipated in carrying out the conspiracy to commit kidnapping." He does not argue that the evidence was insufficient to support his conviction based on a theory of party liability generally.

12

intent to kill Cedillo. *Ruiz v. State*, 579 S.W.2d 206, 209 (Tex.Crim.App. 1979); Gonzalez, 296 S.W.3d at 630. To convict a person of capital murder as a coconspirator under Section 7.02(b), the State need only prove that the person had both the *mens rea* to engage in the conspiracy and the culpable mental state to commit the underlying, *i.e.*, the intended, felony. *Gonzalez*, 296 S.W.3d at 630, quotation marks and internal citations omitted. The State is not required to prove that the person had the intent to commit the actual felony perpetrated by a co-conspirator because the mental state for the underlying felony supplies the *mens rea* for the actual felony. *Id*., quotation marks and internal citations omitted.

To support his contention that the State was required to prove he had the specific intent to kill Cedillo, Appellant relies on *English v. State*, 592 S.W.2d 949 (Tex.Crim.App. 1980). He argues *English* requires a trial court to instruct the jury in all capital murder cases in which Section 7.02(b) is applied that, in order to convict, it must find the defendant intended to kill under each theory stated in the charge, including the theory of party responsibility set forth in Section 7.02(b). Appellant reads *English* too broadly.

In *English*, the appellant was convicted of capital murder. 592 S.W.2d at 950. The charge authorized the jury to convict him as the primary actor or as a coconspirator under Section 7.02(b). *Id*. at 952-54. "In accordance with the language of Section 7.02(b)," the trial court instructed the jury that, in order to convict, it must find the appellant and his co-conspirators were engaged in the commission of a robbery or attempted robbery and he or another co-conspirator intended to kill the victim. *Id*. at 954. The trial court's charge did not authorize the jury to convict the appellant if it found that the murder was committed during the course of a conspiracy to rob the victim, but instead required the jury to find that the appellant was a party to the offense

of capital murder. *English*, 592 S.W.2d at 950.

On appeal, the appellant argued the charge impermissibly allowed the jury to convict him of capital murder if it found he committed the murder during the course of a conspiracy to commit robbery, rather than finding he committed an intentional murder in the course of a robbery or attempted robbery. *Id*. at 952. The court disagreed, concluding Section 7.02(b) is applicable to capital murder cases and the jury was properly charged. *Id*. at 955. In remarking on the charge in question, the court noted that the trial court, "in a commendable act of caution," cautioned the jury it could not convict the appellant unless it found beyond a reasonable doubt, under each theory contained in the charge, he had specific intent that the victim be killed. *Id.* at 954-55. According to the court, this cautionary instruction "insured that the jury would not be confused by the conspiracy language the court used in applying the law to the facts." *Id*. at 955. However, this observation was not the basis for the court's decision and therefore cannot be read as requiring cautionary or restrictive instruction in all cases in which Section 7.02(b) is applied.

Appellant has not shown that the trial court erred in including Section 7.02(b) in the jury charge.

### Jury Unanimity

Appellant's second complaint concerns the absence in the charge of a requirement that the jury unanimously decide under which theory of party liability—aider and abettor under Section 7.02(a)(2)[13] or coconspirator under Section 7.02(b)—he was culpable. He "argues that the

---

[13] Section 7.02(a)(2) establishes party liability as follows:

> A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . .

TEX. PENAL CODE ANN. § 7.02(a)(2)(West 2011).

failure to require all twelve jurors to agree on which theory of party liability applied to [him] violated the United States and Texas Constitutions and the Texas Penal Code." We disagree.

"Jury unanimity is required on the essential elements of the offense but is generally not required on the alternate modes or means of commission." *Leza v. State*, 351 S.W.3d 344, 356 (Tex.Crim.App. 2011); *accord Pizzo v. State*, 235 S.W.3d 711, 714 (Tex.Crim.App. 2007)(unanimous verdict helps ensure each juror is convinced beyond reasonable doubt that prosecution proved each essential element of offense); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Crim.App. 2005)("Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases."). The provisions of Section 7.02, which defines party liability, do not contain elements of the underlying offense, but rather "describe alternative manners by which an accused may be held accountable for the conduct of another who has committed the constituent elements of a criminal offense . . . ." *Leza*, 351 S.W.3d at 357. Thus, if the jury determines that the accused is guilty of every constituent element of the criminal offense charged—"*either* as a principal actor *or* under some theory of party liability"—the jury is not required to unanimously determine what his "precise role" was in the offense. *Id.* [Emphasis in the original].

Here, the Appellant was charged with one offense—the capital murder of Cedillo—under three alternate theories of criminal culpability, two of which were based on Section 7.02. The jury charge required unanimity regarding Appellant's culpability for the capital murder of Cedillo, but did not require unanimity as to the manner in which he was culpable—as a principal or as a party. "Leza makes it clear that multiple theories of party liability under section 7.02 may be listed disjunctively in the jury charge without running afoul of the constitutional unanimity

15

requirement." *Sanchez v. State*, No. 03-13-00050-CR, 2013 WL 4487562, *6 (Tex.App.--Austin Aug. 15, 2013, pet. ref'd)(mem. op., not designated for publication). This is "because the theories are not conceptually distinct; rather, they are slightly different characterizations that can be given the appellant's particular conduct, each of which would make him guilty of the sole crime charged." *Id*. Accordingly, the jury in this case was not required to unanimously agree on the theory of criminal culpability supporting their unanimous conclusion of Appellant's guilt as either a principal or party for a single offense.

Appellant "argues that because 7.02 contains two sections with differing *mens rea* requirements, he was entitled to unanimity as to which of the two different underlying intent theories the jury found from the evidence." Appellant, however, fails to acknowledge, let alone distinguish *Leza*. Instead, he directs our attention to *Kitchens v. State*, 823 S.W.2d 256 (Tex.Crim.App. 1991) and *Aguirre v. State*, 732 S.W.2d 320 (Tex.Crim.App. [Panel Op.] 1987)(op. on reh'g). Upon close review, these cases actually provide additional support for our conclusion. Both *Kitchens* and *Aguirre* stand for the proposition that there is no requirement under a general charge that the jurors designate which of the alternative means of committing the offense they found to have been proven. *See Kitchens*, 823 S.W.2d at 258; *Aguirre*, 732 S.W.2d at 326.

Appellant has not shown that the trial court erred in failing to require the jury to unanimously determine what his exact party accountability might be.

Appellant's third issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

16

September 12, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J. (Not Participating)

(Do Not Publish)